## BOOTH v. UNITED STATES.
### No. 10623.

Circuit Court of Appeals, Ninth Circuit.
March 11, 1946.
Rehearing Denied May 23, 1946.

---

Morris Lavine, of Los Angeles, Cal., for appellant.

Charles H. Carr, U. S. Atty., and James M. Carter and Ray H. Kinnison, Asst. U. S. Attys., and William Strong, Spc. Atty., all of Los Angeles, Cal., for appellee.

Before DENMAN, STEPHENS, and ORR, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment convicting appellant as a co-conspirator in a conspiracy to violate Section 7 of the National Stolen Property Act, Act of May 22, 1934, 48 Stat. 795, as amended by the Act of August 3, 1939, 53 Stat. 1178, 18 U.S.C.A. 413 et seq., The indictment charged appellant and certain other persons with conspiracy to receive, conceal and store in Southern California stock certificates of a value in excess of $5,000, knowing them to have been stolen from the offices of the Superior Portland Cement Inc., Seattle Washington, which certificates were moving in or became a part of interstate commerce when so received, concealed and stored in violation of Section 4 of that Act.[1]

The evidence is uncontradicted that on March 26, 1943, there were stolen stock certificates of value in excess of $5,000 from a desk in the office, in Seattle, Washington, of Z. P. Lucas, president of the Superior Portland Cement Inc. Examination of the securities by the thief or thieves showed that they were registered in Mr. Lucas' name and not in negotiable form. It was then apparent that the thief or thieves had two methods of profiting by their larceny: one by holding the certificates for a reward for their return to Mr. Lucas; the other and more difficult method of forging endorsements and securing a purchaser in a stock market which would be notified of the theft and which purchaser would afford evidence of connection with the thieves when the securities of companies issuing the certificates notified of the theft would refuse to accept them for transfer.

With this obvious likely alternative of their return to Seattle for a collection of a reward, the certificates were transported to California where they came into the possession of the persons charged as conspirators. There is evidence that appellant, in Los Angeles, California, sought to obtain a reward from Mr. Lucas, in Seattle, for the return of his stolen property, knowing it to have been stolen. The question here is whether there properly has been proved the participancy of appellant and his alleged co-conspirators in a conspiracy to

---

[1] The pertinent portions of the Act are "Sec. 4. Whoever shall receive, conceal, store, barter, sell, or dispose of any * * securities * * * of the value of $5,000 or more * * * moving as, or which are a part of, or which constitute interstate * * * commerce, knowing the same to have been stolen, unlawfully converted, or taken * * * shall be punished by a fine of not more than $10,000 or by imprisonment for not more than ten years, or both * * *."

"Sec. 7. If two or more persons enter into an agreement, confederation, or conspiracy to violate any provisions of sections 1–6 hereof, and do any overt act toward carrying out such unlawful agreement, confederation, or conspiracy, such person or persons shall be punished in like manner as hereinbefore provided by this Act."

hold the securities, *knowing that they were in interstate commerce.*

The indictment charged certain named persons as conspirators together with "others whose names are to the grand jury unknown." There was no evidence concerning the named conspirators, other than appellant, that they knew the securities had been or were in interstate commerce and hence that they joined with Booth in the conspiracy, unless such knowledge is to be presumed or inferred from their possession 61 days after the theft.

The Supreme Court has recently held that the presumption that a person possessing stolen property has stolen it [2] will not support the further presumption that the goods were in interstate commerce between the theft and the possession or during possession. In Bollenbach v. United States, 66 S.Ct. 402, 404, rendered subsequent to the trial below, the Supreme Court reversed because of error in the following instruction: "Of course if it occurred afterwards it would not make him guilty, but in that connection I say to you that if the possession was shortly after the bonds were stolen, after the theft, it is sufficient to justify the conclusion by you jurors of knowledge by the possessor that the property was stolen. And, just a moment—I further charge you that possession of stolen property in another State than that in which it was stolen shortly after the theft raises a presumption that the possessor was the thief and transported stolen property in interstate commerce, but that such presumption is subject to explanation and must be considered with all the testimony in the case."

There was other strong evidence for conviction but, in reversing, the Supreme Court states "In view of the place of importance that trial by jury has in our Bill of Rights, it is not to be supposed that Congress intended to substitute the belief of appellate judges in the guilt of an accused, however justifiably engendered by the dead record, for ascertainment of guilt by a jury under appropriate judicial guidance, however cumbersome that process may be."

In the instant case the trial court gave a similar erroneous instruction

"If you believe beyond a reasonable doubt that the defendants or any of them had unexplained possession in California of the securities involved, recently after their theft in Washington, you may infer from their possession that these securities were still a part of interstate commerce.

"That is to say, if the jury believes the securities were stolen and entered into the flow of interstate commerce as such, and there being no evidence of an intermediate sale to a purchaser and that said securities came into the unexplained possession of the defendants, knowing said securities to be stolen property, you may infer that the securities at the time they came into possession of the defendants were still in interstate commerce."

■ From the possession of the stolen securities there arises not only an inference which the jury *may* draw, but a presumption (supra) which *must* be recognized by the jury that the possessor is the thief. Upon such an inference, and no more, the court here permitted the jury a further inference that the possessor knew the securities had been in interstate commerce. It is a part of the common experience of man that the possessor of goods soon after a theft is the thief. The Bollenbach case holds that adding to a presumption from such experience, that of knowledge that the possessor knew the securities had been in interstate commerce "offends reason * * * as much as did the presumption which was found unsupportable in Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519." The district court's adding the latter inference to the former is no more justified than the attempt to enlarge the presumption in the Bollenbach case. Cf. United States v. Ross, 92 U.S. 281, 283, 23 L.Ed. 707, and Chicago, M. & St. P. R. Co. v. Coogan, 271 U.S. 472, 477, 46 S.Ct. 564, 70 L.Ed. 1041.

In the instant appeal there is also evidence of one Mooney, who was not indicted, of a conspiracy between Booth and Mooney, to hold for reward the stolen securities, knowing they were in interstate commerce.

As in the Bollenbach case, this evidence is sufficient to sustain the conviction in the absence of the erroneous instruction. However, the jury well could have inferred that Mooney was not a trustworthy person because he was a participant in the fraudu-

[2] Cf. United States v. Di Carlo, 2 Cir., 64 F.2d 15, 17 (4 and 7 months); Boehm v. United States, 2 Cir., 271 F. 454, 456 (4 months); Giardano v. United States, 9 Cir., 139 F.2d 198, 199, and cases cited.

lent attempt to squeeze a reward out of Mr. Lucas, in which he was to participate, and that he was not indicted so he could give evidence for the government, and hence that they did not believe him. In that event the jury well may have relied upon the erroneous instruction that they could infer the securities had been or were in interstate commerce because they could infer that the possessors of stolen goods. are those who stole them, and hence concluded a conspiracy between Booth and the other possessor.

Since the verdict may have rested upon the erroneous instruction, the judgment of conviction sentencing appellant is reversed.

Reversed.