**UNITED STATES of America, Appellee,**

v.

**Thomas J. RUFFIN, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Ralph S. RUFFIN, Appellant.**

**Nos. 73–1379, 73–1380.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1973.

Decided Jan. 16, 1974.

558

James A. Bell, St. Louis, Mo., for appellant.

Richard S. Stolker, Atty., Dept. of Justice, Washington, D.C., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, and LAY and HEANEY, Circuit Judges.

LAY, Circuit Judge.

Defendants T. J. Ruffin and Ralph Ruffin were convicted on separate counts of receiving and concealing firearms in violation of 18 U.S.C. §§ 922(h) and (j).[1] Ralph Ruffin received concurrent terms of three years' imprisonment on each count. T. J. Ruffin was sentenced to concurrent terms of four years' imprisonment on each count.

---

1. 18 U.S.C. § 922—

(h) It shall be unlawful for any person—
(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
(2) who is a fugitive from justice;
(3) who is an unlawful user of or addicted to marihuana or any depressant or stimulant drug (as defined in section 201(v) of the Federal Food, Drug, and Cosmetic Act) or narcotic drug (as defined in section 4731(a) of the Internal Revenue Code of 1954); or
(4) who has been adjudicated as a mental defective or who has been committed to any mental institution;

to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

. . . . .

(j) It shall be unlawful for any person to receive, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition, or pledge or accept as security for a loan any stolen firearm or stolen ammunition, which is moving as, which is a part of, or which constitutes, interstate or foreign commerce, knowing or having reasonable cause to believe that the firearm or ammunition was stolen.

Defendants on appeal contend that the evidence failed to establish the necessary nexus with interstate commerce. We agree and reverse the convictions.[2]

On February 23, 1972, defendants were stopped by police officers in St. Louis, Missouri, driving a 1968 black Ford LTD, after the car had been observed running a stop sign. According to the government's evidence, T. J. Ruffin was sitting on the passenger's side, Ralph Ruffin was driving and Frank Cooley Hearing, now deceased, was in the back seat. Officers testified at trial that T. J. Ruffin reached into his overcoat and withdrew a revolver with his left hand and a large automatic with his right hand. He passed both of these guns to the driver, Ralph Ruffin, who was observed taking them with his right hand and dropping them down on the floorboard. Thereafter, Ralph reached into his own waistband and withdrew a nickel plated revolver and also placed that on the floorboard. Upon a search the officers found three guns underneath the front seat.[3]

It was stipulated that both defendants had been previously convicted of crimes punishable by a term of imprisonment exceeding one year. T. J. Ruffin was charged in Count One with receiving a .357 caliber magnum revolver, model security six, Serial No. 150–04758, and Ralph Ruffin in Count Two with receiving the same gun. It was stipulated that this gun was shipped on July 6, 1971, from the manufacturer in South Port, Connecticut, to a destination in LaMesa, Texas, by common carrier, and had been stolen from the carrier between July 9, 1971, and July 23, 1971, in Centreville, Illinois. Under Count Three, the concealment charge under which both defendants were found guilty, the gun involved was a Colt .45 caliber automatic pistol, government

model, Serial No. 333933–C, which was stipulated as having been stolen from the trunk of an automobile belonging to an East St. Louis police officer in Collinsville, Illinois, on January 12, 1972.

## THE RECEIVING COUNTS

Section 922(h) is part of Title IV of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L.No.90–351. This section makes it unlawful for certain classes of persons to receive a firearm *"which has been shipped or transported in interstate or foreign commerce."* The government's proof showed only that the revolver had been previously shipped from Connecticut to Texas and stolen in Illinois some seven months prior to the time the weapon was found in the defendants' possession. In construing Title VII of the same Act, the Supreme Court in United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L. Ed.2d 488 (1971), rejected the argument that Title IV and Title VII are redundant. Instead, the Court found significant differences between the two, both as to classes of people covered and, most relevant here, classes of behavior reached. Although the Court left open the exact reach of Title IV (*Bass, supra* at 343 n. 10, 92 S.Ct. at 520), it noted that "Title IV apparently does *not* reach possessions or intrastate transactions at all, even those with an interstate commerce nexus, *but is limited to the sending or receiving of firearms as part of an interstate transportation."* *Id.* at 342–343, 92 S.Ct. at 520 (emphasis added).

In construing 18 U.S.C. § 1202(a) (part of Title VII), the Supreme Court was faced with the requirement that the receipt, possession, or transportation be "in commerce or affecting commerce." The Court concluded that this requirement was satisfied if the government

---

2. Defendants raise other evidentiary issues which, in view of our holding on the interstate commerce question, we need not discuss.

3. The government did not file charges on the nickel plated revolver allegedly because there was no proof that it had moved in interstate commerce. Ralph pled guilty to a state charge of possession of this gun.

**560**

"demonstrates that the firearm received has *previously* traveled in interstate commerce." *Id.* at 350, 92 S.Ct. at 524 (emphasis added). And, of significance to the present case, the Court noted that "[t]his reading [of Title VII] preserves a significant difference between the 'receipt' offenses under Title IV and Title VII." *Id.* at 350 n. 18, 92 S.Ct. at 524.

 Thus, we conclude that it is not sufficient under § 922(h) for the government to prove that the firearm had at some remote time previously traveled in interstate commerce. As pointed out in *Bass*, Title IV is primarily concerned with the *transportation* of firearms. Accordingly, for a receipt to be cognizable under § 922(h), the government must show that at the time the gun was received it was *part* of an interstate transportation. The proof in this case, as well as the court's instruction,[4] was inadequate to meet this test. *Accord*, United States v. Craven, 478 F.2d 1329, 1336 (6th Cir. 1973).[5] The government showed only that the gun had been stolen in Illinois from an interstate carrier and that it was found some seven months later in defendants' possession in Missouri.

As recognized in *Bass*, this construction comports with the interpretation given the predecessor of § 922(h), 15 U.S.C. § 902(f).[6] The statutory language of § 902(f) relating to the interstate commerce requirement remained

unchanged in § 922(h). In Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), where the Court held unconstitutional the statutory presumption in § 902(f), it was stated:

Both courts below held that the offense created by the Act is confined to the receipt of firearms or ammunition as a part of interstate transportation and does not extent to the receipt, in an intrastate transaction, of such articles which, at some prior time, have been transported interstate. The Government agrees that this construction is correct.

*Id.* at 466, 63 S.Ct. at 1244.

## THE CONCEALMENT COUNT

Count III, charging each defendant with concealing the automatic, arises under § 922(j) of Title IV. That section applies to a firearm *"which is moving as, which is a part of, or which constitutes, interstate or foreign commerce."* At trial, the government's evidence showed that the gun had been stolen in Illinois on January 12, 1972, and was found in defendants' possession in Missouri on February 23, 1972.

 We are unable to find any court decision which has construed the interstate commerce language of § 922(j). However, we find the only reasonable construction of § 922(j), like § 922(h), requires proof of transactions that are *a part of* an interstate transaction. The

---

4. Although not objected to by the defendants, the trial court's instruction inaccurately described the necessary proof: "In order to establish the defendant's guilt under Counts 1 and 2 of the Indictment the Government need show that each of the defendants received a firearm *which had previously traveled in interstate commerce.*" (emphasis added).

5. United States v. Craven, 478 F.2d 1329 (6th Cir. 1973), is the only circuit court decision dealing with the proper construction of the interstate commerce language of § 922(h). Although the primary issue was whether an inference of receipt could be drawn from constructive possession, the court also discussed the interstate commerce requirement. The Court of Appeals, citing *Bass* and *Tot*, recognized that § 922(h) does not extend to firearms which have merely

*previously* been transported interstate. However, the court stated that "[t]he interstate transportation element of § 922(h) was met by the prosecution's evidence of the very recent Lexington, Kentucky, to Woodlawn, Ohio, transportation of the weapon." *Craven, supra* at 1336. The time period involved was only ten days. The court added:

[R]eceipt under 18 U.S.C. § 922(h)(1) may be shown circumstantially by proving possession, at least where no significant passage of time has elapsed between the interstate transportation and proof of possession, and no intervening intrastate transactions have occurred.

*Id.* at 1337.

6. The legislative history of the two acts is comprehensively set forth in United States v. Craven, 478 F.2d 1329 (6th Cir. 1973).

statutory language clearly requires a *continuing* relationship with interstate commerce at the time of the alleged concealment. The fundamental issue is whether the government has carried its burden of proof that the gun was still moving or was still part of interstate commerce at the time defendants concealed it. If the gun had come to rest in Missouri, after it was stolen in Illinois on January 12, 1972, the interstate character of the transaction would be over, and defendants could not be found guilty of any *federal* crime. *Cf.* United States v. Bass, 404 U.S. 336, 349–350, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971); Bollenbach v. United States, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946).

The language relating to interstate commerce under § 922(j) is virtually identical to the earlier language of the National Stolen Property Act, and its successor statutes, 18 U.S.C. §§ 2313 and 2315.[7] We look to the judicial construction of these acts for guidance.

In Booth v. United States, 154 F.2d 73 (9th Cir. 1946), the defendant was charged under the National Stolen Property Act with conspiracy to receive, conceal and store stolen stock certificates. The evidence established that the stock had been stolen from Seattle, Washington, and transported to California, where the defendant came into possession.

The court reversed the conviction, on the basis of the following instruction which it found erroneous:

> If you believe beyond a reasonable doubt that the defendants or any of them had unexplained possession in California of the securities involved, recently after their theft in Washington, you may infer from their possession that these securities were still a part of interstate commerce.
>
> That is to say, if the jury believes the securities were stolen and entered into the flow of interstate commerce as such, and there being no evidence of an intermediate sale to a purchaser and that said securities came into the unexplained possession of the defendants, knowing said securities to be stolen property, you may infer that the securities at the time they came into possession of the defendants were still in interstate commerce.[8]

---

7. 18 U.S.C. § 2313 reads as follows:

 Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, *moving as, or which is a part of, or which constitutes interstate or foreign commerce*, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both. (emphasis added).

 18 U.S.C. § 2315 provides:

 Whoever receives, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more, or pledges or accepts as security for a loan any goods, wares, or merchandise, or securities, of the value of $500 or more, *moving as, or which are a part of, or which constitute interstate or foreign commerce*, knowing the same to have been stolen, unlawfully converted, or taken; or

 Whoever receives, conceals, stores, barters, sells, or disposes of any falsely made, forged, altered, or counterfeited securities or tax stamps, or pledges or accepts as security for a loan any falsely made, forged, altered, or counterfeited securities or tax stamps, *moving as, or which are a part of, or which constitute interstate or foreign commerce*, knowing the same to

 have been so falsely made, forged, altered, or counterfeited; or

 Whoever receives in interstate or foreign commerce, or conceals, stores, barters, sells, or disposes of, any tool, implement, or thing used or intended to be used in falsely making, forging, altering, or counterfeiting any security or tax stamp, or any part thereof, *moving as, or which is a part of, or which constitutes interstate or foreign commerce*, knowing that the same is fitted to be used, or has been used, in falsely making, forging, altering, or counterfeiting any security or tax stamp, or any part thereof—

 Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

 This section shall not apply to any falsely made, forged, altered, counterfeited, or spurious representation of an obligation or other security of the United States or of an obligation, bond, certificate, security, treasury note, bill, promise to pay, or bank note, issued by any foreign government or by a bank or corporation of any foreign country. (emphasis added).

8. In *Booth*, the court relied in part on Bollenbach v. United States, 326 U.S. 607, 66

*Booth, supra* at 75.

The Ninth Circuit found no logical basis upon which the inference could be supported.

In Schwachter v. United States, 237 F.2d 640 (6th Cir. 1956), the defendant was convicted of selling an automobile moving in interstate commerce under 18 U.S.C. § 2313. The Sixth Circuit reversed, because of the trial court's failure to submit the interstate commerce question to the jury. The court noted that:

> It is recognized that the interstate movement of a car does not necessarily cease when the car stops and transportation of it into the other state ends. The *sale* thereafter may be an *incident* to the theft and *transportation* and so tied up with it as to constitute the final step of a continuous unlawful scheme. . . . *But its character of being a part of interstate commerce does not continue indefinitely after its transportation ends.* After a period of time and *depending upon what is done with the car,* it may no longer be correct to treat it as moving in interstate commerce. . . . The acquisition of the car and later sale of it by a person who is in no way connected with the theft and transportation may be under such circumstances as to terminate its interstate character. It is a question of fact under the surrounding circumstances in each particular case. Being a question of fact it is for the jury to determine.

*Schwachter, supra* at 644.

Here the trial court left the commerce question to be decided by the jury. The trial court's instruction only repeated the language of the statute as an ele-

ment of the crime. However, the difficulty here is that the only fact bearing on whether the gun was concealed while still moving in interstate commerce is that it was stolen in another state some 41 days before defendants were found to have concealed it. The facts demonstrate only interstate movement at some earlier time. In order to convict, the jury necessarily had to infer that the gun was *still* moving in interstate commerce. In accord with the analogous decisions, we hold this inference does not rationally follow. Under the government's proof the defendants could just as easily have been concealing the gun sometime after it came to rest in Missouri. In this regard, the case of Davidson v. United States, 61 F.2d 250 (8th Cir. 1932), is factually similar. In an early decision under 18 U.S.C. § 408, the facts disclosed that the car was stolen on March 23, 1931, in Hominy, Oklahoma, and transported to Kansas City, Missouri, on or about March 31, 1931. The charge was receiving and concealing a stolen auto which was moving in interstate commerce. The facts were undisputed, however, that the stolen car had come to rest in Missouri before the defendants came into possession of it. Nonetheless, this court observed:

> The mere fact that the car had theretofore been transported in interstate commerce is not sufficient. The act does not purport to exercise jurisdiction over individuals who receive or sell stolen cars after such cars cease to move in or be a part of interstate commerce.

*Id.* at 255.

■ The time period between the interstate theft and the defendants' possession is, of course, a significant factor in determining the sufficiency of the ev-

S.Ct. 402, 90 L.Ed. 350 (1946). *Bollenbach's* facts are materially different than the case at bar. The charge in *Bollenbach* was *transporting* certificates in interstate commerce and conspiracy to *transport.* The defendant had merely sold the stocks after their travel to the second state. The Court held that it could not be presumed from this that he had any part in the *transportation,* which was the basis of the charge. Therefore, it struck down the trial court's presumption that defendant's possession proved that he had transported them. The case is relevant, however, for the proposition that an inference which "offends reason" cannot be allowed to stand.

idence to substantiate a conviction. The time element, however, is only one factor, but essential to our holding here, there must also exist other corroborative facts to support the charge that the defendants' possession of the stolen article was an intermediate or final step in the completion of an interstate scheme. *See, e.g.*, United States v. Brady, 425 F. 2d 309 (8th Cir. 1970) (conviction affirmed; car stolen in Kansas October 8, 1968, defendant borrowed money to purchase a car on October 2, bought car with Colorado license on October 21, immediately placed Missouri plates on car, obtained fictitious bill of sale from seller on November 28; defendant's purchase was "final step" of interstate transportation); Babb v. United States, 351 F.2d 863 (8th Cir. 1965) (conviction affirmed; switching of license plates by the receiver-defendant after recent theft and interstate transportation and proof of an intended trip to California showed stolen car still part of interstate commerce); United States v. Browning, 439 F.2d 813 (1st Cir. 1971) (conviction affirmed; defendant's sale in Rhode Island of auto stolen from Massachusetts "final link" in interstate chain); Pearson v. United States, 378 F.2d 555 (5th Cir. 1967) (conviction affirmed; jewel theft where the holding and delivery of the stolen ruby was part of the "integral scheme" so as to be connected with the interstate transportation of it).

 This court in United States v. Briddle, 430 F.2d 1335 (8th Cir. 1970), discussed the sufficiency of proof required to show that the stolen property was still moving in interstate commerce at the time that it was feloniously received or concealed. Judge Vogel there wrote:

> The test, therefore, is not the length of time the car is held or how often it was resold, but what was done with the car after it came into the defendant's possession.

*Briddle, supra* at 1338–1339.

In the present case there is no evidence to suggest that either defendant stole the gun or had any connection with its theft.[9] Under the circumstances we find that there was not sufficient proof by the government to justify a jury finding that the firearm was moving as, or was a part of, or constituted interstate or foreign commerce when the defendants, or either of them, obtained possession of it. *Cf.* United States v. Wyatt, 437 F.2d 1168 (7th Cir. 1971). *See also* Schwachter v. United States, 237 F.2d 640 (6th Cir. 1956); Grimsley v. United States, 50 F.2d 509 (5th Cir. 1931).

There are insufficient facts on the present record to justify either defendant's conviction under § 922(j).

Judgments of convictions reversed.

---

9. Defendants were not charged under 18 U.S.C. § 922(i) for interstate transportation of a stolen gun.