**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Quay C. KILBURN, Defendant-Appellant.**

**No. 78–1169.**

United States Court of Appeals, Tenth Circuit.

Argued Nov. 13, 1978.

Decided Dec. 13, 1978.

Rehearing Denied Feb 12, 1979.

Certiorari Denied March 19, 1979. See 99 S.Ct. 1517.

---

Clarke Wells Karr, Denver, Colo., for defendant-appellant.

Steven W. Snarr, Asst. U. S. Atty., Salt Lake City, Utah (Ronald L. Rencher, U. S. Atty., Salt Lake City, Utah, with him on the brief), for plaintiff-appellee.

Before HOLLOWAY, BARRETT and LOGAN, Circuit Judges.

BARRETT, Circuit Judge.

Quay C. Kilburn appeals his jury conviction of receiving a firearm after former conviction of a felony, in violation of 18 U.S.C. § 922(h).

The Government's case was established primarily by the testimony of six witnesses: Ron Shippers, deputy sheriff of Salt Lake County; Bruce Austin of the Salt Lake City Police Department; Frank Pahl, co-owner of Pahl's Loan Office in Salt Lake City; Michael Housekeeper, asst. manager for Thrifty Drug Stores of Salt Lake City; Lorna Winkelman, acquaintance of Kilburn; and Warren Wheeler, special agent, Bureau of Alcohol, Tobacco and Firearms.

Deputy Shippers testified that: one day in July, 1976, while on routine patrol, he located a particular vehicle at the request of his dispatcher and subsequently stopped the vehicle and detained Kilburn, the driver of the vehicle, until other officers from the Salt Lake City Police Department arrived on the scene; as he opened a door to the vehicle, he observed a .22 caliber rifle inside and he removed it from the automobile at the time Kilburn was arrested; after running the serial number and the make of the rifle through the NCIC, he returned the rifle to the vehicle.

Officer Austin testified that: on July 14, 1976, then armed with felony warrants for Kilburn's arrest, he proceeded to the location where Kilburn was detained by Deputy Shippers and assisted in the arrest of appellant at that time; a Salt Lake City wrecker towed the car which Kilburn had been driving to the city impound lot where he conducted a routine inventory of the articles; the inventory, conducted without a search warrant, produced, *inter alia*, a .22 caliber rifle.

Mr. Pahl testified that: he and his two brothers conducted a pawning business known as Pahl's Loan Office at 1588 South State Street in Salt Lake City; he identified plaintiff's Exhibit 2 as a federal firearms report which contained some information supplied by him concerning a .22 caliber automatic Glenfield rifle with serial number 27505207; he sold the .22 caliber rifle to Lorna N. Winkelman on June 10, 1976; the serial number on the rifle displayed to him in court corresponded with the serial number on the firearms report.

Michael Housekeeper testified that: in November 1975, while employed as an assistant manager of the Thrifty Drug Store in Magna, Utah, he sold the .22 caliber Glenfield rifle, bearing serial number 27505207 to one Thomas E. Montoya of Magna, Utah and completed the pertinent information on the Federal Firearms Transaction Record introduced as plaintiff's Exhibit 3; the rifle, marked as plaintiff's Exhibit 1, was the same rifle sold to Montoya in November, 1975; all of the guns purchased by the Thrifty Drug Store in Magna, Utah, were supplied by only one company, United Merchandising Corp. of Los Angeles, California; the rifle in question was purchased from United Merchandising Corporation of Los Angeles, California.

The Government's key witness, Lorna Winkelman testified that: in the first part of June, 1976 she was employed as a maid at the Riverside Motel when she first became acquainted with Kilburn, where he resided for a period of time; on June 10, 1976, she traveled in Kilburn's car to a pawn shop located at about South Sixteenth and State Street and purchased a rifle at Kilburn's request; Kilburn accompanied her into the pawn shop where he indicated to the clerk what he wanted; she completed and signed the Federal Firearms Transaction Record; the clerk placed the rifle on the counter and it was paid for by Kilburn and taken by him from the shop to his car; since the day the rifle was purchased at the pawn shop she neither saw the rifle nor Kilburn until the day she testified at trial; the rifle purchased at the pawn shop was a .22 caliber rifle with a scope on it and it looked like the gun marked as plaintiff's Exhibit 1 presented by the Government; the rifle examined at trial bore the same serial number recorded on the firearms transaction record which she signed at the pawn shop on June 10, 1976.

Mr. Wheeler testified that: as a Special Agent with the Bureau of Alcohol, Tobacco

and Firearms, he investigated the case against Kilburn; prior to trial he fired .22 caliber bullets from the rifle in question and determined that the rifle functioned as designed.

Counsel for Kilburn and the Government stipulated at trial that the rifle was received at the Thrifty Drug Store in Magna, Utah from California on April 8, 1975. At the close of the Government's case, Kilburn moved for a judgment of acquittal on the ground that the transaction whereby Kilburn acquired the rifle was intrastate as opposed to interstate in nature and, therefore, he could not be guilty under the indictment as charged. Kilburn did not dispute the fact that the gun had been shipped from California to Utah on April 8, 1975. However, he argued that Montoya's purchase and resale of the rifle removed it from interstate commerce and that the subsequent sale to Kilburn was an intrastate transaction. The trial court, relying on *Barrett v. United States*, 423 U.S. 212, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976), rejected Kilburn's argument and denied his motion for judgment of acquittal. No evidence was presented by Kilburn at trial.

After some deliberation, the jury returned to the courtroom with the question "Are we to find his innocence or guilt on guilty possession of the firearm or possession of a firearm that was knowingly possessed as an interstate firearm?" The court responded to the question by reiterating a portion of the instruction concerning the elements of the crime charged.

On appeal Kilburn contends that: 1) The transaction which formed the basis of his conviction was intrastate in nature and thus not chargeable under 18 U.S.C. § 922(h); 2) Inasmuch as knowledge is an essential element of the offense charged, the trial court erred by omitting any reference thereto in its instructions to the jury; and 3) The Government failed to prove that he had been previously convicted of a felony.

### I.

Kilburn urges that the trial court erred in charging the jury that as one of the elements of the offense the Government must prove that he received a firearm which *had been* shipped or transported in interstate commerce. Appellant argues that the statute under which he was convicted, 18 U.S.C. § 922(h), requires, as an element of proof, that the firearm was in interstate commerce when received by him. We disagree.

The plain language of § 922(h) as it pertains to an interstate transaction must not be confused in the evolution of the various gun control statutes and the case law preceding it. We will undertake a review of the statutes and important decisions which indicate its rather turbulent and often confused history.

Section 2(f) of the Federal Firearms Act of 1938 was the predecessor of 18 U.S.C. § 922(h) and provided:

It shall be unlawful for any person who has been convicted of a crime of violence or as a fugitive from justice to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce, and the possession of a firearm or ammunition by any such person shall be presumptive evidence that such firearm or ammunition was shipped or transported or received, as the case may be, by such person in violation of this Act.

The construction and validity of § 2(f) of the 1938 Act was put in issue in *Tot v. U. S.*, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943). *Tot* dealt primarily with the constitutionality of the presumption contained in the second clause of § 2(f) which provided that possession of a firearm or ammunition by a person convicted of a crime of violence or a fugitive from justice was evidence that such firearm or ammunition was shipped or transported or received in violation of the Act. The court upheld the Government's position and the ruling of the appellate court in *Tot, supra*, that intrastate transactions were excluded from the Act:

Both courts below held that the offense created by the Act is confined to the receipt of firearms or ammunition as part

of interstate transportation and does not extend to the receipt, in an intrastate transaction, of such articles which, at some prior time, have been transported interstate. The Government agrees that this construction is correct.

319 U.S., at p. 466, 63 S.Ct. at p. 1244. Thus, Kilburn contends that the above observation in *Tot, supra* amounts to a binding precedent on the construction of § 922(h), and that *Tot* governs the present case.

Title VII of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.App. § 1202(a) is a statute which is similar to and which complements § 922(h). Section 1202(a) reads, in pertinent part:

Any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony . . and who receives, possesses or transports in commerce or affecting commerce . . any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

In *United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971) the Supreme Court resolved the issue of whether or not receipt or possession of a firearm by a convicted felon charged under § 1202(a) must be connected with interstate commerce. The indictment against Bass failed to allege and there was no evidence to show that the firearms involved had been possessed in interstate commerce or that they affected such commerce. The Government contended that the statutes did not require proof of a connection with interstate commerce in individual cases involving possession or receipt of firearms. In essence, the *Bass* court held that there existed an ambiguity in the statute. The court then resolved the issue in favor of the narrow reading that a nexus with interstate commerce must be shown with respect to all three offenses contemplated by the statute. The court observed that the pertinent subsections of Titles IV (of which § 922(h) is a part) and VII addressed their prohibitions to some of the same people, but that they

also reach substantial groups of people not involved by the other. Title VII encompasses "convicted felons." Title IV reaches persons "under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." The Court noted that Titles VII and IV were, in part, redundant, but observed that: ". . . no conclusion can be drawn from Title IV concerning the correct interpretation of Title VII." 404 U.S. at 344, 92 S.Ct. at 521. The court further stated that: ". . . the reach of Title IV itself is a question to be decided finally some other day." 404 U.S. at 343 n. 10, 92 S.Ct. at 520.

The reach of Title IV was determined in *United States v. Ruffin*, 490 F.2d 557 (8th Cir. 1974), wherein the defendants were convicted, *inter alia*, of receiving firearms in violation of 18 U.S.C. § 922(h). The defendants there were stopped by police officers on a traffic violation. Both defendants were found to be in possession of certain firearms. At trial, it was stipulated that both defendants had previously been convicted of a crime punishable by a term of imprisonment exceeding one year; further it was stipulated that one of the guns which formed the basis of the charge was shipped on July 6, 1971, from a manufacturer in South Port, Connecticut to a destination in La Mesa, Texas, by common carrier and that it had been stolen from the carrier between July 9, 1971 and July 23, 1971 in Illinois. The *Ruffin* court instructed the jury, *inter alia*, that the Government need show that each of the defendants received a firearm which had previously traveled in interstate commerce. Relying heavily upon *Bass*, the court concluded that a receipt cognizable under § 922(h) is established if the Government shows that at the time the gun was received it was part of an interstate transportation. The court held that the proof established by the Government, was inadequate to meet this test, citing to *United States v. Craven*, 478 F.2d 1329 (6th Cir. 1973). The *Ruffin* court observed that the *Craven* decision was the only one which had theretofore dealt with the proper con-

struction of the interstate commerce language of § 922(h). The Court of Appeals in *Craven* cited *Bass* and *Tot* in holding that § 922(h) does *not* extend to firearms which have merely previously been transported in interstate commerce.

The decision in *Ruffin* concerning the requisite interstate nexus of § 922(h) set the stage for *Barrett v. United States*, 423 U.S. 212, 96 S.Ct. 498, 46 L.Ed.2d 450 (1975):

> Because of the importance of the issue and because the Sixth Circuit's decision appeared to have overtones of conflict with the opinion and decision of the United States Court of Appeals for the Eighth Circuit in *United States v. Ruffin*, 490 F.2d 557 (1974), we granted certiorari limited to the § 922(h) issue.

423 U.S., at p. 215, 96 S.Ct. at p. 500. We believe that *Barrett* is directly applicable and controlling in the instant case.

The petitioner in *Barrett* had been convicted of a felony when he was charged and convicted of purchasing a .32 caliber Smith & Wesson revolver at a Western Auto Store in Booneville, Kentucky, where he resided. The evidence showed that the revolver had been manufactured in Massachusetts, shipped by the manufacturer to a distributor in North Carolina, and later received by the Kentucky dealer from the distributor in March 1972, and purchased by Barrett one month later. The factual situation in the present case parallels *Barrett* in that: no evidence was presented at trial to show that Kilburn had personally participated in any way in the previous interstate movement of the firearm; the firearm was purchased over the counter out of the dealer's stock;[1] the gun reached the dealer through interstate channels; both trial courts instructed that the interstate requirement of § 922(h) was satisfied if the firearm at some time in the past had traveled in interstate commerce; both argued that § 922(h) does not reach an isolated *intrastate* receipt.

The issue before the court in *Barrett* was ". . . whether § 922(h) has application to a purchaser's intrastate acquisition of a firearm that previously, but independently of the purchaser's receipt, had been transferred in interstate commerce from the manufacturer to the distributor and then from the distributor to the dealer." Id. 423 U.S. at p. 213, 96 S.Ct. at p. 499.

The issue in the case at bar is identical to that in *Barrett*, notwithstanding that here we have an intervening intrastate purchase of the rifle by Montoya. As in *Barrett* Kilburn argues that § 922(h) was not intended to, and does not reach an isolated intrastate receipt of a firearm. This was rejected by the *Barrett* court when it observed ". . . the language of § 922(h), the structure of the Act of which § 922(h) is a part, and the manifest purpose of Congress are all adverse to petitioner's position." Id. at p. 216, 96 S.Ct. at p. 501. The court held that the language "to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce" is without ambiguity: "It is directed unrestrictedly at the felon's receipt of any firearm that 'has been' shipped in interstate commerce. It contains no limitation to a receipt which itself is part of the interstate movement." *Id.* The court noted that while the language "to receive any firearm" is in the present tense, the interstate commerce reference "has been shipped" is couched in the present perfect tense, denoting a completed act. Accordingly, the court stated "there is no warping or stretching of language when the statute is applied to a firearm that already has completed its interstate journey and has come to rest in the dealer's showcase at the time of its purchase and receipt by the felon." Id. at p. 217, 96 S.Ct. at p. 501.

The structure of the Act was broken down by the *Barrett* court into its various subsections in order to demonstrate that

---

1. It is not apparent from the transcript of trial whether Kilburn was redeeming from the pawnbroker a rifle which had previously been pawned by him or whether it was an original purchase out of the pawn dealer's stock of weapons. In any event, the redemption of a firearm from a pawnshop would be a transaction contemplated under the statute. See *Huddleston v. United States*, 415 U.S. 814, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974).

Congress broadly intended to bar potentially irresponsible and dangerous persons from acquiring firearms by any means, and to show that adoption of the petitioner's interpretation of § 922(h) would result in a gap in the statute. The court observed:

> To confine § 922(h) to direct interstate receipts would result in having the Gun Control Act cover every aspect of intrastate transactions in firearms except receipt. This, however, and obviously, is in the most crucial of all. Congress surely did not intend to except from the direct prohibition of the statute the very act it went to such pains to prevent indirectly, through complex provisions, in the other sections of the Act.

423 U.S. at p. 219, 96 S.Ct. at p. 502.

Nothing in *Barrett* diminishes our holding that a firearm previously transported in interstate commerce which has been the subject of more than one intrastate transaction and which is remote in time to its previous interstate movement is covered by § 922(h) of the Act. Our holding is not novel. The same result was reached in *United States v. Haddad*, 558 F.2d 968 (9th Cir. 1977). In *Haddad*, the subject firearm had ceased traveling in interstate commerce at least five years prior to the defendant's receipt and the defendant received the firearm from a private party. Relying upon *Barrett, supra*, the *Haddad* court ruled that the proximity of the felon's receipt of the firearm to interstate commerce has little relationship to the accomplishment of the statutory goal.

This Court has, on at least two occasions, looked with favor on the *Barrett* holding, i. e., that § 922(h) of the Act applies if a felon receives a firearm *after* the interstate shipment is complete. *United States v. Francisco*, 575 F.2d 815 (1978); *United States v. Brzoticky*, 588 F.2d 773 (10th Cir. 1978).

## II.

 Kilburn contends that the trial court took the issue of knowledge away from the jury by failing to include in its instructions a reference to the elements of knowledge as set out in the indictment. The indictment does charge that Quay C. Kilburn *knowingly* did receive a firearm. However, "knowledge" is neither an element of the crime, nor a matter which the prosecution is required to prove in establishing a violation under § 922(h). *Haddad, supra*. In a case involving a firearms violation charge under § 1202(a)(1) of Title VII, this Court observed: "The addition of an issue by careless drafting cannot give the defendant a windfall. The terms 'knowingly' and 'unlawfully,' introduced an element which the statute does not require the prosecution to prove and thus is clearly surplusage." *United States v. Henry*, 504 F.2d 1335 (10th Cir. 1974).

## III.

 One of the elements of the offense as charged in the indictment was that Kilburn had previously been convicted of a crime punishable by imprisonment for a term exceeding one year. This element, Kilburn contends, was not established. Kilburn concedes that the Government introduced its Exhibit 4, a certified judgment and commitment, in evidence which shows that one Quay Cleon Kilburn was convicted in 1964 of violating 18 U.S.C. § 2312 (Dyer Act), and was sentenced to a term of imprisonment exceeding one year. However, Kilburn argues that plaintiff's Exhibit 4 was received in evidence without affording his attorney an opportunity to object thereto. We disagree. The record does not indicate that plaintiff's Exhibit 4 was introduced and admitted with such haste as to preclude defense counsel's objection. Certainly, Kilburn's counsel was aware of his right to review plaintiff's Exhibit 4 and to lodge any objection thereto prior to its admission in evidence. No objection was lodged. Absent plain error, defense counsel will not be permitted to stand mute following motion for introduction of an exhibit in evidence at trial and then complain on appeal that no proper foundation for its admission was laid. Failure to timely object resulted in a waiver. See *United States v. Guerrero*, 517 F.2d 528 (10th Cir. 1975); and *United States v. Brown*, 541 F.2d 858 (10th Cir. 1976).

In addition, Kilburn contends that there was no independent corroboration that he was one and the same person named in and sentenced under the 1964 judgment and commitment admitted as plaintiff's Exhibit 4; and that reversal is warranted under the holdings in *Matula v. United States*, 327 F.2d 337 (10th Cir. 1964) and *Gravatt v. United States*, 260 F.2d 498 (10th Cir. 1958). In *Gravatt* this court set out the proper method to prove a prior conviction:

> Introduce in evidence the indictment or information, judgment and sentence and commitment, and that 'proof of the facts should then be made that the defendant, in the case on trial is one and the same person as the defendant in the prior conviction relied upon to establish the second or subsequent conviction.'

260 F.2d at 499.

We held in *Matula* that the Government does not discharge its burden of proving a prior conviction by introducing court records pertaining to a person of the same or similar name. However, this court in *Matula* observed: ". . . each such channel of proof is a proper approach and becomes sufficient in law when supported by independent evidence tending to support its trustworthiness. The independent proof need not be sufficient, alone, to establish the element of the offense." 327 F.2d at p. 338.

In the instant case, the trial judge, while instructing the jury, stated:

> This case arises out of an inditement (sic) that was returned here into court. Congress has enacted a statute which provides that if a purchaser of a gun has once been convicted of a felony—a felony is a crime punishable by imprisonment for no (sic) longer than a year and, for all purposes here, you can assume that element of this offense has been proved. The judgment of commitment signed by me in a case back in 1964 is received in evidence here. It's part of the record. That's one of the exhibits, and I've told you the exhibits received are part of the evidence. Now, there's an exhibit here that shows that this defendant was con-victed of a felony in this court in 1964. The judgment and commitment bearing the signature of the judge is received in evidence, so that requirement of this offense in this case has been satisfied by this document.

Brief of Appellant, p. 22.

■ We hold that in light of the above references made by the trial judge to Kilburn's prior conviction, *Matula* and *Gravatt* do not apply. Here the trial judge supplied the element of independent corroboration.

■ Kilburn further contends that the trial court's reference to the prior conviction in the instruction set out above was prejudicial as it impressed the jury as to the merits of the Government's case against Kilburn. Here, the trial judge, who was also the trial judge in the former case in which Kilburn was convicted of a felony, was merely taking judicial notice of his own action. In any event, no objection was made at trial to the court's instruction. In the absence of such an objection or exception thereto, the general rule is that appellate courts will not consider challenges thereto unless plain error amounting to a denial of a fundamental right of the accused is demonstrated. *Lowther v. United States*, 455 F.2d 657 (10th Cir. 1972).

## IV.

■ We hold that there is no merit in Kilburn's contention that Congress exceeded its power under the interstate commerce clause in enacting § 922(h) of Title IV.

We AFFIRM.