UNITED STATES v. ROYER.

(District Court, N. D. California. May 12, 1903.) ⁹

No. 4,059.

1. POST OFFICE—EMBEZZLEMENT OF MONEY-ORDER FUNDS—CUSTODY OF FUNDS

A clerk in charge of a branch post-office station, authorized to issue money orders payable at other offices or stations, is intrusted in his official capacity with the care and custody of the funds upon which he is so authorized to draw in such sense that he is guilty of embezzlement, under Rev. St. § 4046 [U. S. Comp. St. 1901, p. 2752], where he issues money orders in payment of his private debts, which are paid to the holders from such funds.

2. SAME—SUFFICIENCY OF INDICTMENT.

An indictment for embezzlement, under Rev. St. § 4053 [U. S. Comp. St. 1901, p. 2755], charging that defendant was the clerk in charge of a branch post office, and as such clerk was intrusted with the sale of postage stamps and stamped envelopes, for which he refused and neglected to account, sufficiently alleges that defendant was "intrusted by law" with the sale of such stamps and stamped envelopes within the meaning of that section, in view of section 3918 [U. S. Comp. St. 1901, p. 2681], which provides that such stamps and envelopes shall be furnished to all postmasters, and shall be kept for sale at all post offices.

On Motion for New Trial and in Arrest of Judgment.

Edward J. Banning, Asst. U. S. Atty.
George D. Collins, for defendant.

DE HAVEN, District Judge. The defendant was charged with the violation of sections. 4046 and 4053 of the Revised Statutes [U. S. Comp. St. 1901, pp. 2752, 2755], and, having been convicted of both offenses, now moves for a new trial and for an arrest of judgment.

The indictment in its first count charges that defendant was a clerk in charge of a branch money-order post-office station at the city and county of San Francisco; that as such clerk he had in his possession and under his control the sum of $1,240.55, lawful money of the United States of America, the same being a portion of the money-order funds of the United States, and that so having in his possession and under his control the said money he feloniously embezzled and converted it to his own use. The fact that there was a shortage of $1,240.55 in the money-order account of the defendant was not disputed upon the trial, but the defendant offered himself as a witness, and testified in substance that such shortage was due to the fact that he had issued postal money orders, which in the aggregate amounted to that sum, to certain creditors of his in payment of his private indebtedness to them, and that he never actually received any money thereon. In view of this testimony the defendant requested the court to instruct the jury as follows:

"You are instructed that the defendant cannot be convicted on the first count of the indictment unless the evidence proves beyond all reasonable doubt that he actually received the money, or some part of the money, referred to in that count. If, in point of fact, he issued money orders without having in his possession and without having received any money in respect thereto—in other words, if the money orders issued by him did not represent

money previously paid in to him, and you believe from the evidence before you that the money orders in question which were issued by the defendant were issued without having previously received the money therefor—then your verdict must be that the defendant is not guilty on the first count of the indictment."

This instruction was not given, and the defendant urges in support of his motion for a new trial that the refusal to so charge was error. It is argued that, assuming the testimony of the defendant to be true, he did not commit the crime of embezzlement, because the money paid upon the money orders issued by him was never in his custody and possession, and that his only offense was that of issuing money orders without having previously received the money therefor, in violation of section 4030, Rev. St. [U. S. Comp. St. 1901, p. 2742]. The defendant is undoubtedly charged in the first count of the indictment with embezzlement, and it was, therefore, incumbent upon the government to prove that he had fraudulently appropriated to his own use money-order funds belonging to the United States, and that such funds had been intrusted to his care and custody as a clerk in the United States post office; and it thence follows that, if the testimony given by the defendant shows that he was never intrusted with the possession and custody of the money which was paid on the postal money orders issued by him, the instruction requested by the defendant should have been given to the jury. The question for decision, then, is this: Assuming that the orders were issued by the defendant simply in payment of his private debts, can it be said that the money which the government paid to the holders of such orders, and which has been lost to it, was so far in the care and custody of the defendant that the wrongful appropriation thereof to his own use in the manner stated was an embezzlement of such money by him? Section 4029, Rev. St. [U. S. Comp. St. 1901, p. 2741], is as follows:

"The postmaster of every city where branch post-offices or stations are established and in operation, subject to his supervision, is authorized, under the direction of the Postmaster-General, to issue, or to cause to be issued, by any of his assistants or clerks in charge of branch post-offices or stations, postal money-orders, payable at his own or at any other money-order office, or at any branch post-office or station of his own, or of any other money-order office, as the remitter thereof may direct."

It would seem to be too clear for argument that under this section funds payable upon money orders drawn by a postmaster or clerk having authority to issue the same in the regular course of his official duty may be deemed to be intrusted to such postmaster or clerk in the sense that, if wrongfully converted by him to his own use, he is guilty of the crime of embezzlement. Such funds are in fact subject to his official order; that is, they are set apart by the government for the payment of money orders issued by him, and are thus intrusted to his official care, although they may not be in his actual custody. The case of Calkins v. The State, 18 Ohio St. 366, 98 Am. Dec. 121, is directly in point. The defendant in that case was indicted under a statute which made it an offense for a clerk or servant to embezzle property belonging to any other person, and coming into his possession or under his care by virtue of such employment. The in-

dictment in that case charged the defendant with the embezzlement of wheat belonging to a railroad company by which he was employed as a clerk. It appeared upon the trial that the railroad company had a grain elevator in which all grain arriving by way of its road was stored, and in the transaction of this business an account was kept of each consignment of grain received. This account was kept by the defendant, and he was also authorized to issue to the owners or consignees of the grain thus stored a writing called a "grain order," and to subscribe thereto the name of the general agent of the company, and upon presentation of such order to issue a shipping order to the holder. The court in that case said:

"Such being the duties and powers of Calkins under his employment, the evidence further shows very satisfactorily that while so employed he clandestinely issued fictitious grain orders, caused them to be sold in market, and appropriated the proceeds of the sale to his own use; and that he subsequently issued shipping orders based upon the fictitious grain orders, which resulted in the delivery by the company of the amount of grain named in them to the holders. On this state of proof it was claimed in behalf of the prisoner that the wheat in the warehouse, and alleged to have been embezzled, was not 'under his care,' and that no wheat passed from the warehouse into his possession. The court below held otherwise, and this is assigned for error. We are of opinion that the court below did not err in its holding on these points. There is no more reason why courts should allow themselves to be misled by mere names and shadows in the administration of justice in criminal than in civil cases. Calkins, under and by virtue of his employment, had the wheat in the warehouse of his employers so far under his care and in his possession and control as to give him the power to make an efficient transfer of title to any part of it to any person who should become the bona fide purchaser of a grain order issued by him in the name of Baldwin, a transfer of title effective in favor of the holder of such order and against his employers. This power was used to divest his employers of their property, and to put the proceeds of it into his own pocket. We think he had all the care of the property which the statute contemplates, and that when he clandestinely transferred the title of wheat from the railroad company to an innocent holder of a grain order, and appropriated the proceeds thereof to his own use, the act of embezzlement was complete."

This reasoning would seem to be conclusive upon the question now under consideration. It certainly is quite satisfactory to my mind. The defendant here, by virtue of his employment as clerk in charge of a branch money-order post office, actually converted to his own use money-order funds of the government by applying the same to the payment of his debts, and he was able to effect this wrongful conversion because such funds were so much under his official control that they were subject to his official order. Without pursuing the discussion further, it is sufficient to say that the instruction requested by the defendant was properly refused.

2. The second count of the indictment sets forth that the defendant was the clerk in charge of a branch post office in the city of San Francisco, and as such clerk was intrusted with the sale of a large number of postage stamps and stamped envelopes of the value of $132.35, and that as such clerk in charge of said branch post office he feloniously and willfully refused and neglected to account for the postage stamps and stamped envelopes intrusted to him, although requested so to do. Section 4053, Rev. St. [U. S. Comp. St. 1901, p. 2755] provides:

"Any person intrusted by law with the sale of postage-stamps or stamped envelopes, who shall refuse or neglect to account for the same, * * * shall be deemed guilty of embezzlement."

It is claimed that this count of the indictment does not state an offense, because it fails to allege that the defendant was intrusted by law with the sale of the postage stamps and stamped envelopes referred to. Section 3918, Rev. St. [U. S. Comp. St. 1901, p. 2681] provides:

"Postage-stamps and stamped envelopes shall be furnished by the Post-master-General to all postmasters, and shall be kept for sale at all post-offices; and each postmaster shall be held accountable for all such stamps and envelopes furnished to him."

While the indictment does not charge in direct terms that the postage stamps and stamped envelopes referred to in the second count were intrusted by law to the defendant, still, in view of this statute, it sufficiently appears from the facts alleged that such was the case.

The motions for a new trial and for arrest of judgment are denied.