**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Geraldine Elizabeth HOOBLER,**
**Defendant-Appellant.**

**No. 77–5354.**

United States Court of Appeals,
Sixth Circuit.

Argued April 19, 1978.

Decided Oct. 11, 1978.

---

Andrew W. Miller, Cadiz, Ohio, for defendant-appellant.

James C. Cissell, U. S. Atty., Daniel A. Brown, Asst. U. S. Atty., Columbus, Ohio, for plaintiff-appellee.

Before ENGEL and KEITH, Circuit Judges, and JOHNSTONE, District Judge.*

ENGEL, Circuit Judge.

Appellant was sentenced to eight years in prison upon her conviction of a one-count indictment charging her with conversion of postal funds, in violation of 18 U.S.C. § 1711 (1976). Because its precise language is important in this appeal, the indictment is quoted verbatim:

From on or about November 13, 1975, and continuing to on or about January 11, 1977, within the Eastern Division of the

---

* The Honorable Edward H. Johnstone, District Judge, United States District Court for the Western District of Kentucky, sitting by designation.

Southern District of Ohio, GERALDINE ELIZABETH HOOBLER, Clerk-in-Charge of the Germano, Ohio, Contract Rural Station of the Jewett, Ohio, Post Office, converted to her own use approximately $5,825.30 in postal funds, consisting of (1) $5,725.17 due the United States Postal Service for the sale of United States of America Postal Money Orders numbered 1,902,939,159 through 1,902,-939,199 and 1,982,660,900 through 1,982,-660,999, and (2) $100.13 due the United States Postal Service for stamp sales, said funds coming into her custody and control as a result of her employment and service as such employee and without her having properly and lawfully accounted for said funds.

In violation of Title 18, United States Code, Section 1711.

18 U.S.C. § 1711 provides in pertinent part as follows:

> Whoever, being a Postal Service officer or employee, . . . converts to his own use . . . any money or property coming into his hands or under his control in any manner, in the execution or under color of his office, employment, or service, whether or not the same shall be the money or property of the United States; or fails or refuses . . . to account for . . . any such money or property, . . . is guilty of embezzlement; and every such person, as well as every other person advising or knowingly participating therein, shall be fined in a sum equal to the amount or value of the money or property embezzled or imprisoned not more than ten years, or both; but if the amount or value thereof does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

In this appeal Geraldine Hoobler asserts, as she did unsuccessfully before the district court, that she could not be prosecuted under Section 1711 because, as a matter of law, she was not a "Postal Service officer or employee" within the meaning of that section.

At trial Mrs. Hoobler introduced in evidence an agreement which she entered into with the Post Office Department on a government POD form 4042, styled "RURAL STATION OR RURAL BRANCH AGREEMENT," which she represented to be the existing agreement between herself and the government in her operation of the Germano, Ohio, contract rural station. The agreement, dated April 3, 1964, was terminable by either party on 30 days' notice, with an additional provision that it may be "terminated by the Postmaster upon his giving the contractor one day's notice thereof in writing whenever in the Postmaster's judgment the interests of the Postal Service requires such action." Paragraph one of the General Provisions incorporated in the Agreement provides:

> The clerk in charge is an independent contractor, and neither he nor any person employed by him to assist in the conduct of the rural station or branch is an employee of the Federal Government for any purpose whatsoever.

The government does not dispute the validity of the agreement nor Mrs. Hoobler's claim that it remained in effect during the period described in the indictment. Instead the government asserts, and the district judge held, that she was, in fact, an officer or employee within the meaning of 18 U.S.C. § 1711, notwithstanding her status under the contract or under Postal Service laws or regulations. Thus the trial judge instructed the jury:

> As a matter of law, a clerk in charge of a branch postal station, authorized to issue money orders, sell stamps and to otherwise act in an official capacity in behalf of The U.S. Postal Service, is an officer or employee of the Service.

Relying upon *United States v. Royer*, 122 F. 844 (N.D.Cal.1903), and *Withrow v. United States*, 420 F.2d 1220 (5th Cir. 1969), the United States urges that "Mrs. Hoobler's status as an officer or employee for purposes of criminal exposure is emphasized by her position within the postal service hierarchy, under the direct control of the Jewett postmaster and obligated to submit re-

ports thereto. . . . It is exactly this sort of official whose conduct is intended to be scrutinized under 18 U.S.C. § 1711." At the time Mrs. Hoobler entered into her agreement with the Postal Service, 39 U.S.C. § 3101 provided:

As used in this part—

(1) "employee," unless the context otherwise indicates, includes postmasters, officers, supervisors, and all other persons employed in the postal field service, regardless of title, *other than persons who provide services for the Department on a fee, contract,* job, or piecework *basis* . . . . (Emphasis added.)

By the Postal Reorganization Act, Pub. L.No. 91–375, 84 Stat. 719 (1970), Congress undertook a comprehensive reorganization of the Post Office Department. Effective July 1, 1971, the office of Postmaster General and the Post Office Department were abolished and all of their functions, powers and duties were transferred to a newly-created United States Postal Service. 84 Stat. 773–74. Although the new Act lacks the precise definition of "employee" formerly contained in 39 U.S.C. § 3101, the Act provides that:

Provisions of title 39, United States Code, in effect immediately prior to the effective date of this section but not re-enacted by this Act . . . shall remain in force as rules or regulations of the Postal Service established by this Act . . . to the extent the Postal Service is authorized to adopt such provisions as rules or regulations, until they are revoked, amended, or revised by the Postal Service.

39 U.S.C. at 9236 (1970); Postal Reorganization Act, *supra,* 84 Stat. at 775.[1] *See generally* 39 C.F.R. § 211.1. The Code of Federal Regulations specifically provides for the continuation of those former sections of Title 39 relating to personnel:

§ 211.4   **Interim personnel regulations.**

(a) *Continuation of Personnel Regulations of the Post Office Department.* All

regulations of the former Post Office Department dealing with officers and employees, in effect at the time the United States Postal Service commenced operations, continue in effect according to their terms until modified or repealed by the Postal Service or pursuant to a collective bargaining agreement under the Postal Reorganization Act.

(b) *Continuation of Personnel Provisions of Former Title 39, United States Code.* Except as they may be inconsistent with other regulations adopted by the Postal Service or with a collective bargaining agreement under the Postal Reorganization Act, all provisions of former Title 39, United States Code, dealing with and applicable to postal officers and employees immediately prior to the commencement of operations of the Postal Service continue in effect as regulations of the Postal Service.

39 C.F.R. § 211.4(a)–(b).

A current regulation indicates that there are two types of stations and branches: "classified" and "contract." The former type is operated by postal employees while the latter type is not. Under that regulation, a contract station is defined as follows:

*Contract.* Operated under contract by persons who are not Federal Government employees. Persons operating contract stations and branches are independent contractors and *neither the contractors nor any person employed by them* to assist in the conduct of contract stations or branches *shall be employees of the Federal Government for any purpose whatsoever.*

39 C.F.R. § 241.2(b)(2) (emphasis added). *Accord,* Postal Service Manual, Part 241.-222. *See generally* 39 C.F.R. § 211.2(a)(2) (provisions of the Postal Service Manual are regulations of the Postal Service). We note also that paragraph one of current Postal Service form 7369, entitled "GENERAL PROVISIONS FOR AGREEMENTS

---

1. This so-called saving provision was not codified and appears as a preface to Title 39 in the United States Code.

TO CONDUCT CONTRACT STATIONS/BRANCHES OR COMMUNITY POST OFFICES," adopted in March, 1974 and thus well after the effective date of the Postal Reorganization Act, tracks the same language contained in paragraph one of the General Provisions of the 1964 Hoobler contract:

Neither the contractor nor any person employed by him to assist in the conduct of the contract station, branch or community post office is an employee of the Federal Government for any purpose whatsoever.

In short, we are unable to find any indication whatever that Mrs. Hoobler is or ever was an employee of the Post Office Department or the United States Postal Service at any time. In view of the unequivocal language of the contract and of the Postal Service laws and regulations cited, we find the government's contention to be unpersuasive and unsupported.

We find the government's reliance upon *United States v. Royer, supra,* and *Withrow v. United States, supra,* inapposite. In *Royer,* as here, the defendant was a clerk of a branch post office station who was shown to have embezzled money order funds. Royer was convicted of two offenses: embezzling money order funds in violation of the Act of June 8, 1872, ch. 335, § 122, 17 Stat. 299 (1872) [as compiled at Rev.Stat. § 4046 (1878)][2], and failing to account for the sale of postage stamps, in violation of the same Act, § 45, 17 Stat. 291 [as compiled at Rev.Stat. § 4053 (1878)].[3] As can be plainly seen from the cited statutes, the coverage under the 1872 Act was far more broadly stated than it is under Section 1711. By their terms, the statutes under which Royer was convicted applied to certain nonemployees, while the scope of Section 1711 covers only Postal Service officers and employees.[4]

In *Withrow v. United States, supra,* the defendant, a rural mail carrier, was found to be a Postal Service employee within the meaning of Section 1711. However, no claim was made that the defendant there was a nonemployee providing service on a contract basis rather than an employee as defined in former 39 U.S.C. § 3101. Moreover, the Postal Reorganization Act confirms a rural mail carrier's status as a postal employee. *See* 39 U.S.C. § 1007.

---

**2. Sec. 4046.**
**Embezzlement of money-order funds; penalty; explanation.**
Every postmaster, assistant, clerk, *or other person* employed in or *connected with the business or operations of any money-order office* who converts to his own use, in any way whatever, or loans, or deposits in any bank, except as authorized by this Title, or exchanges for other funds, any portion of the money-order funds, shall be deemed guilty of embezzlement; and any such person, as well as every other person advising or participating therein, shall, for every such offense, be imprisoned for not less than six months nor more than ten years, and be fined in the sum equal to the amount embezzled; and any failure to pay over or produce any *money-order funds intrusted to* such person shall be taken to be prima-facie evidence of embezzlement; and upon the trial of any indictment against any person for such embezzlement, it shall be prima-facie evidence of a balance against him to produce a transcript from the money-order account-books of the Sixth Auditor. . . . (Emphasis added.)

**3. Sec. 4053.**
**Neglect to deposit postal revenues.**
. . . And *any person intrusted* by law *with the sale of postage-stamps or stamped*

envelopes, who shall refuse or neglect to account for the same, or who shall pledge or hypothecate or unlawfully dispose of them, for any purpose whatever, shall be deemed guilty of embezzlement, and shall be punishable by the like fine and imprisonment as are provided in this section for the embezzlement of money. (Emphasis added.)

**4.** In the 1909 revision of the federal criminal code, Congress merged the offenses upon which the prosecution in *Royer* was based. Act of March 4, 1909, ch. 321, § 225, 35 Stat. 1133 (1909); *see id.,* § 341, 35 Stat. 1153–54 (repealing provisions). At that time the class of offenders included "a postmaster *or other person* employed in or *connected with any branch of the postal service.*" 35 Stat. 1133 (emphasis added). *See generally* 18 U.S.C. § 355 (1940 ed.).

In 1948, Congress revised the criminal code and narrowed the class to include only "a postmaster or Postal Service employee." Act of June 25, 1948, ch. 645, § 1711, 62 Stat. 780. This language was later changed to provide punishment for "a Postal Service officer or employee," the language of the statute under which Hoobler was convicted. Postal Reorganization Act, *supra,* 84 Stat. 778–79.

We do not doubt that had Hoobler been convicted under the statute in effect at the time of *Royer*, or had she been a rural mail carrier, her conviction might be sustained. As it is, we conclude that to expand the meaning of "employee" in Section 1711 to include defendant here would be at odds not only with her explicit status under the contract and under the postal statutes and regulations but with the intent of Congress evidenced in the evolution of the Section 1711 offense. *See* note 4, *supra.*

As·an alternative argument, the government asks us to uphold the conviction by applying the rationale of *United States v. West,* 562 F.2d 375 (6th Cir. 1977), *cert. denied,* 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515 (1978).

In *West* the defendant, an employee of the United Parcel Service, was convicted of a violation of the Gun Control Act of 1968, 18 U.S.C. § 922(j), upon allegations and proof that he had received, concealed and stored a Smith and Wesson revolver and a Browning pistol which were "moving as and were a part of and constituted interstate commerce." Construing the language of Section 922(j) consistently with our circuit's construction of similar language in the Dyer Act, 18 U.S.C. §§ 2311–13, *United States v. Wages,* 458 F.2d 1270 (6th Cir. 1972), we held that West's conviction could not be sustained under Section 922(j) because the guns were not shown to have been stolen at the time they crossed state lines. Nevertheless, we found that both the language of the indictment and the evidence supported a conviction under 18 U.S.C. § 659. 562 F.2d at 378. *See also United States v. Yoppolo,* 435 F.2d 625 (6th Cir. 1970).

In *West,* we held:

It is apparent here that the language of the indictment returned by the grand jury fully complies with the requirement that it "be a plain, concise and definite written *statement of the essential facts* constituting the offense charged." Fed. R.Crim.P. 7(c)(1) (emphasis added). The indictment serves to notify a defendant of what he is called upon to defend, and

its adequacy is determined by the statement of the facts which constitute the offense. While 7(c)(1) provides that "[t]he indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated," subsection 3 further indicates that "[e]rror in the citation or its omission shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice."

In *United States v Garner,* 529 F.2d 962 (6th Cir.), *cert. denied,* 426 U.S. 922, 96 S.Ct. 2630, 49 L.Ed.2d 376 (1976), our court upheld a conviction where the defendant was incorrectly charged with conspiracy to violate 18 U.S.C. § 471–73, whereas the specific factual circumstances contained in the indictment and proven at trial made out a conspiracy to violate 18 U.S.C. § 495. We noted that this circuit "has adhered to the principle that if the indictment charges acts that are illegally [sic] under an existing federal statute, then the indictment is not invalidated because it cited the wrong statute." 529 F.2d at 966, *citing United States v. Perez,* 457 F.2d 555 (6th Cir. 1972); *Pettway v. United States,* 216 F.2d 106 (6th Cir. 1954). Under Rule 7, "[t]he fact that an indictment contains a miscitation of a statute is not grounds for dismissing the indictment unless the defendant is misled thereby." *Garner, supra,* 529 F.2d at 966; *see United States v. Hutcheson,* 312 U.S. 219, 229, 61 S.Ct. 463, 85 L.Ed. 788 (1941).

We are unable to ascertain any possible prejudice to the defendant here from the miscitation of the applicable federal statute. The record fails to suggest that the defendant was disadvantaged or that he would have altered his defense in a way which would have affected the outcome. We find the error in the indictment to be harmless. Fed.R.Crim.P. 7(c)(3).

562 F.2d at 378–79.

■ Here, the government asserts that the same facts alleged in the indictment and proved at trial support a conviction

under 18 U.S.C. § 641.[5] It, therefore, urges that we should, as in *West*, simply remand for a modification of the judgment to reflect the conviction under Section 641 instead of Section 1711, leaving the eight-year sentence and judgment otherwise undisturbed.[6]

Section 641 is a more general section, not dealing specifically with postal offenses, but with theft from the United States or any department or agency thereof:

Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof . . . .

18 U.S.C. § 641. Construing the indictment as a "statement of the essential facts constituting the offense charged," Fed.R. Crim.P. 7(c)(1), we conclude that the indictment returned against Hoobler states a crime under Section 641 and that the evidence is sufficient as to each element. *See West, supra,* 562 F.2d at 378. The remaining issue, as in *West*, is whether the defendant was misled to her prejudice due to the citation of Section 1711 in the indictment. Fed.R.Crim.P. 7(c)(3).

Section 641 expressly requires as an element of the crime that the property embezzled belong to the United States while, on the contrary, Section 1711 does not. The district judge's instructions in this regard, otherwise proper under Section 1711, were, therefore, incomplete in describing the crime set forth in Section 641. In addition, the trial court instructed the jury by reading the text of Section 1711, which states that the statute applies to "any money or property coming into his hands or under his control in any manner, in the execution or under color of his office, employment, or service, *whether or not the same shall be the money or property of the United States* . . . ." (Emphasis added.)

Thus, so far as the instructions were concerned, the jury was permitted to find Hoobler guilty upon instructions which did not include an essential element of Section 641 and upon recitation of a statute which, by its very terms, excluded from their consideration that element of ownership. While there are, indeed, many parallels between the facts here and those in *West*, we note that in *West* a jury trial had been waived and the essential facts had been stipulated to by the defendant. While this may not be a critical distinction in the government's view, we believe it is sufficient to observe that in the application of the rationale of *West*, each case must necessarily rest upon its own facts in determining the possibility of prejudice which could result from the miscitation.

In view of the miscitation in the indictment, the fact of United States' ownership was not disputed. We are, however, unwill-

---

**5.** The defendant, on the other hand, urges that her conviction, if sustained at all, should be under the more lenient provisions of 18 U.S.C. § 1707, which applies to the theft of property "used by" the Postal Service.

Prior to the 1948 revision of the criminal code, the statute from which Section 1707 derives penalized the theft of property "in use by *or belonging to* " the post office. 18 U.S.C. § 313 (1940 ed.) (emphasis added). In narrowing the scope of the offense to cover property "used by" the post office, Congress clearly intended to collect offenses against United States' ownership under Section 641. "The phrase 'used by' was substituted for 'in use by or belonging to' in order to limit the application of the section [18 U.S.C. § 1707] to property used by the Post Office Department. Theft of public property belonging to governmental de-

partments is covered by section 641 of this title [Title 18]." H.Rep. No. 304, 80th Cong., 1st Sess., at A117 (1947).

We have no doubt that under the indictment and the evidence the stamp and money order revenues belonged to the Postal Service and were not simply used by it. *United States v. Pursley,* 431 F.2d 961, 962–63 (5th Cir.), *cert. denied,* 400 U.S. 879, 91 S.Ct. 123, 27 L.Ed.2d 117 (1970). We therefore reject appellant's assertion that Section 1707 rather than Section 641 governs her conduct.

**6.** Sections 641 and 1711 contain identical ten-year maximum sentences for offenses involving amounts greater than $100, although they differ as to the range of fines which may be imposed.

ing to make the further assumption that that fact was indisputable and would not have been litigated under a proper indictment. While there seems to be little doubt that the money order and stamp revenues in fact belonged to the United States, "juries are not bound by what seems inescapable logic to judges." *Morissette v. United States*, 342 U.S. 246, 276, 72 S.Ct. 240, 256, 96 L.Ed. 288 (1952). In addition our circuit has held that the failure to instruct the jury upon an element of a criminal offense is generally "such a significant flaw in the trial process as to require reversal of any convictions obtained for the offense involved." *United States v. O'Dell*, 462 F.2d 224, 232 (6th Cir. 1972).

While we view the issue here as close, we find ourselves in that posture in which we cannot say with confidence as we did in *West*, that there was no possible prejudice to the defendant by the error in the indictment, especially where it appears to have been carried over into the specific instructions of the court in a jury trial.

Reversed and remanded for entry of a judgment of acquittal.