**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Barry William WEST,
Defendant-Appellant.**

No. 77–5031.

United States Court of Appeals,
Sixth Circuit.

Argued April 13, 1977.

Decided Sept. 7, 1977.

Rehearing and Rehearing En Banc
Denied Oct. 6, 1977.

Alfred H. Knight, Nashville, Tenn., (Court Appointed, CJA), for defendant-appellant.

Charles H. Anderson, U. S. Atty., Irvin H. Kilcrease, Jr., Asst. U. S. Atty., Nashville, Tenn., for plaintiff-appellee.

Before WEICK, LIVELY and ENGEL, Circuit Judges.

ENGEL, Circuit Judge.

Barry William West was employed by United Parcel Service in Nashville, Tennessee. On the day of the alleged offense, West was manning a conveyor belt at the United Parcel Service when he noticed that one of the parcels in shipment had broken open. He removed two guns from the parcel, a Smith and Wesson .38 caliber revolver and a Browning .380 caliber pistol. He then taped the box closed and it continued to its destination, where the consignee, a registered firearms dealer in Sante Fe, Tennessee reported the loss to special agents of the Bureau of Alcohol, Tobacco and Firearms of the Department of the Treasury.

On March 17, 1976, an A.T.F. agent questioned West, who readily admitted the foregoing facts. He also retrieved the weapons from his home and delivered them to the government agent. The voluntariness of West's confession is not challenged here and was fully established at the trial. It is undisputed that the guns had been a part of a legitimate commercial shipment from Dalton, Georgia, to the consignee in Sante Fe, Tennessee. The guns were not stolen at the time they crossed the state line from Georgia into Tennessee and did not recross state lines after the theft.

In a non-jury trial, West was convicted on a one-count grand jury indictment which charged that:

> On or about January 2, 1976, in the Middle District of Tennessee, BARRY WILLIAM WEST knowingly did receive, conceal and store stolen firearms, that is, a Smith and Wesson .38 caliber revolver, Model 60, Serial No. R89979 and a Browning pistol, .380 caliber, Serial No. 70N01435, which were then moving as and were a part of and constituted interstate commerce from Rossville, Georgia, to Santa Fe, Tennessee, knowing and having reasonable cause to believe that the firearms were stolen.
>
> In violation of Title 18, United States Code, Section 922(j).

The court suspended imposition of sentence and placed West on probation for a period of three years.

In his direct appeal, West urges he cannot be convicted under § 922(j) because the weapons were not stolen at the time they were transported from Georgia into Tennessee. He also claims that he cannot be convicted of receiving and storing guns which he himself stole, relying primarily upon *Milanovich v. United States*, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961).

The statute cited in the indictment is a part of the Gun Control Act of 1968 and provides:

It shall be unlawful for any person to receive, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition, or pledge or accept as security for a loan any stolen firearm or stolen ammunition, which is moving as, which is a part of, or which constitutes, interstate or foreign commerce, knowing or having reasonable cause to believe that the firearm or ammunition was stolen.

West argues forcefully that it is an essential element of the above statute that the weapon be stolen at the time it crosses state lines. As support he relies upon this circuit's construction of similar language in the Dyer Act, 18 U.S.C. §§ 2311–13, (1970). In *United States v. Wages,* 458 F.2d 1270 (6th Cir. 1972), our court reversed a conviction because the government failed to prove that the vehicle in question was stolen at the time it entered Kentucky, although it was stolen at the time the defendant received it. Reversing the appellant's conviction on grounds of insufficient evidence, Judge Kent held:

We find nothing in this record from which the jury could conclude that the transportation (driving) of the tractor from Michigan to Kentucky was done at a time when the tractor had been stolen. *Wages, supra,* at 1272.

If § 922(j) is similarly construed, the acts set forth in the indictment and proved clearly would not amount to a violation of that section because the guns were not stolen at the time they crossed state lines into Tennessee.

While § 922(j) was included as a part of the Gun Control Act of 1968, it originated as an amendment to the Federal Firearms Act, ch. 850, § 2(h), 52 Stat. 1251 (1938), which at that time provided:

It shall be unlawful for any person to receive, conceal, store, barter, sell, or dispose of any firearm or ammunition or to pledge or accept as security for a loan any firearm or ammunition moving in or which is a part of interstate or foreign commerce, and which while so moving or constituting such part has been stolen, knowing, or having reasonable cause to believe the same to have been stolen.

With certain changes, the offense was more recently incorporated into the Gun Control Act of 1968 and codified at 18 U.S.C. § 922(j).[1]

Although legislative histories of the original and subsequent versions fail to furnish any insight into the problem of statutory construction involved here, one significant alteration in language is evident. Congress has changed the language which describes the requisite nexus to interstate commerce. The law presently covers a stolen firearm "which is moving as, or which is a part of, or which constitutes, interstate or foreign commerce", whereas the earlier statute covered a firearm "moving in or which is a part of interstate or foreign commerce, and which while so moving or constituting such part has been stolen."

While no substantive change is evident on the fact of the amendment,[2] we are impressed by the fact that the law as originally enacted in 1938 has been altered and tracks the language of the Dyer Act, § 2313 of which states in part:

Whoever, receives, conceals, stores, barters, sells, or disposes of any motor vehicle . . . moving as, or which is a part of, or which constitutes interstate . . . commerce, knowing the same to have been stolen . . .

1. For a brief period the prohibition was enacted as part of Title IV of the Omnibus Crime Control and Safe Streets Act of 1968. Pub.L. No. 90–351, 82 Stat. 231, § 922(h) (1968). *See generally* S.Rep. 1097, 90th Cong., 2d Sess. (1968), *reprinted in* 2 U.S.Code Cong. & Admin. News, at 2205 (1968).

2. When the original offense was first revised as part of the Omnibus Crime Control and Safe Streets Act of 1968, *see* note 1 *supra,* the Sen-

ate Report simply noted the revised version was "a modified form of the restriction in . . . the . . . Federal Firearms Act . . . ." S.Rep. 1097, 90th Cong., 2d Sess. (1968), *reprinted in* 2 U.S.Code Cong. & Admin.News, at 2205 (1968). *See also* H.Rep. 1577, 90th Cong., 2d Sess. (1968) *reprinted in* 3 U.S.Code Cong. & Admin.News, at 4421 (1968) (Gun Control Act of 1968).

In nearly identical language the Gun Control Act of 1968 declares it unlawful for any person to "receive, conceal, store, barter, sell or dispose of any stolen firearm . . . which is moving as, or which is a part of, or which constitutes, interstate . . . commerce, knowing or having reasonable cause to believe that the firearm . . . was stolen." We find the fact of change itself and the parallels too close to attribute them to chance.

We recognize, of course, that at the time of the 1968 amendments, the Congress could not have been aware of our interpretation in *Wages*, *supra*. Nonetheless, absent a compelling reason to the contrary, logic supports the contention that Congress, consciously employing similar language in the two statutes, desired that they be construed in a similar fashion. *See United States v. Ruffin*, 490 F.2d 557, 561 (8th Cir. 1973).

We recognize also that quite different congressional motives are involved in the enactment of gun control legislation and stolen vehicle legislation. More important to us, however, is the fact that differing statutory constructions would be anomalous where the precise language of the former appears to have been borrowed from the latter.

■ Our view is further fortified because the offense stated in the indictment is already the subject of federal criminal legislation in 18 U.S.C. § 659 (1970):

Whoever embezzles, steals, or unlawfully takes, carries away, or conceals, or by fraud or deception obtains from any pipeline system, railroad car, wagon, motortruck, or other vehicle, or from any tank or storage facility, station, station house, platform or depot or from any steamboat, vessel, or wharf, or from any aircraft, air terminal, airport, aircraft terminal or air navigation facility with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight, express, or other property; or

Whoever buys or receives or has in his possession any such goods or chattels, knowing the same to have been embezzled or stolen . . .

Under facts closely analogous to those here, § 659 was applied to convict the defendants in *United States v. Yoppolo*, 435 F.2d 625 (6th Cir. 1970), upon proof that cases of liquor were stolen in Toledo, Ohio, while in transit from Scotland to Cincinnati. The evidence in *Yoppolo* further established that the goods were not transported across state lines after the theft. It was sufficient, our court held, that the goods were shown to have been moving in commerce because "[a]n interstate or foreign shipment does not lose its characteristic until it arrives at its final destination and is there delivered". *Id.* at 626; *Winer v. United States*, 228 F.2d 944 (6th Cir.), cert. denied, 351 U.S. 906, 76 S.Ct. 695, 100 L.Ed. 1442 (1956).[3]

We hold, therefore, that the language of the indictment and the undisputed facts at the trial support a conviction under 18 U.S.C. § 659, but not under § 922(j). The question then remains whether we must reverse the defendant's conviction. For the reasons set forth below, we conclude that the defendant's conviction should be affirmed.

■ It is apparent here that the language of the indictment returned by the grand jury fully complies with the requirement that it "be a plain, concise and definite written *statement of the essential facts* constituting the offense charged". Fed.R. Crim.P. 7(c)(1) (emphasis added). The indictment serves to notify a defendant of what he is called upon to defend, and its adequacy is determined by the statement of

---

3. While similarities between the Dyer Act and § 659 suggest an inconsistency between *Wages* and *Yoppolo*, the answer, we believe, is that § 659 is a measure clearly directed to protect the channels of commerce among the states. The Dyer Act, by contrast, typifies the use of Congress' power over interstate commerce to reach criminal conduct of a nationwide character which poses no threat to the channels of commerce. The difference justifies the apparently divergent approaches taken by our circuit in *Wages* and *Yoppolo*.

the facts which constitute the offense. While 7(c)(1) provides that "[t]he indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated", subsection 3 further indicates that "[e]rror in the citation or its omission shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice".

In *United States v. Garner*, 529 F.2d 962 (6th Cir.), *cert. denied*, 426 U.S. 922, 96 S.Ct. 2630, 49 L.Ed.2d 376 (1976), our court upheld a conviction where the defendant was incorrectly charged with conspiracy to violate 18 U.S.C. § 471-73, whereas the specific factual circumstances contained in the indictment and proven at trial made out a conspiracy to violate 18 U.S.C. § 495. We noted that this circuit "has adhered to the principle that if the indictment charges acts that are illegally [sic] under an existing federal statute, then the indictment is not invalidated because it cited the wrong statute." 529 F.2d at 966, *citing United States v. Perez*, 457 F.2d 555 (6th Cir. 1972); *Pettway v. United States*, 216 F.2d 106 (6th Cir. 1954). Under Rule 7, "[t]he fact that an indictment contains a miscitation of a statute is not grounds for dismissing the indictment unless the defendant is misled thereby." *Garner, supra*, 529 F.2d at 966; *see United States v. Hutcheson*, 312 U.S. 219, 229, 61 S.Ct. 463, 85 L.Ed. 788 (1941).

We are unable to ascertain any possible prejudice to the defendant here from the miscitation of the applicable federal statute. The record fails to suggest that the defendant was disadvantaged or that he would have altered his defense in a way which would have affected the outcome. We find the error in the indictment to be harmless. Fed.R.Crim.P. 7(c)(3).

The statutes involved contain different penalties. The maximum penalty for a violation of 18 U.S.C. § 922(j) is a fine of not more than $5,000 or imprisonment for not more than five years or both. The penalty for a violation of 18 U.S.C. § 659 is $5,000 fine or imprisonment not to exceed 10 years or both, unless the amount or value involved does not exceed $100, in which case the offense carries a fine of not more than $1,000 or imprisonment of not more than one year or both. Since the proofs did not indicate that the weapons involved had a value of more than $100, we conceive that the maximum penalty for the offense in a conviction under § 659 would be $1,000 or imprisonment for not more than one year.

Since imposition of sentence was suspended and West was placed upon probation, the terms of the judgment need not be disturbed. West is of course, benefited to the extent that upon any violation of probation, the lesser penalty of § 659 would apply.

■ · Finally, appellant's reliance upon *Milanovich v. United States*, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961), is misplaced. Contrary to his assertion, *Milanovich* does not hold that the thief of property may not be convicted for receiving the same property. *Milanovich* simply holds that ordinarily he may not be convicted for the offense of stealing *and* the offense of receiving. The problem of dual punishment is evident in the language of *Milanovich* itself, *id.* at 554-5, 81 S.Ct. 728, and has been recognized as well in our circuit's interpretation of the case. *See Gentry v. United States*, 533 F.2d 998 (6th Cir. 1976).

Remanded for modification of the judgment to reflect a conviction under 18 U.S.C. § 659 instead of under 18 U.S.C. § 922(j).