**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Ronald Gene HONAKER,
Defendant–Appellee.**

**No. 92–6660.**

United States Court of Appeals,
Sixth Circuit.

Submitted Aug. 6, 1993.

Decided Sept. 20, 1993.

Daniel A. Clancy, U.S. Atty., Amy E. Spain, Asst. U.S. Atty., Office of U.S. Atty., Memphis, TN, John F. De Pue (briefed), Washington, DC, for plaintiff-appellant.

Lawrence Kern, Memphis, TN (briefed), for defendant-appellee.

Before: GUY and NELSON, Circuit Judges; and HOOD, District Judge.*

---

* The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Ken- tucky, sitting by designation.

HOOD, District Judge.

In this case, we are asked to review dismissal of the indictment against Ronald J. Honaker [Honaker] for violation of 18 U.S.C. § 922(j), receiving and concealing stolen firearms that have moved in interstate commerce, having reasonable cause to believe that the firearms were stolen. The district court judge dismissed the indictment because the interstate commerce transportation occurred prior to the theft of the firearms. Finding that the district court erred in its interpretation of § 922(j), we reverse.

## I

On April 23, 1991, Honaker was arrested along with James Walter Clark [Clark] on suspicion of burglary in Memphis, Tennessee. The arresting officers handcuffed Honaker and Clark and placed them in the police car. At that time, Clark was carrying a gun, stolen earlier in the day, which he concealed with him in the back seat. While being transported, Clark freed himself from his handcuffs, took the gun and shot both of the police officers.

Clark then removed another gun from one of the officers and fled on foot with Honaker. Clark and Honaker were recaptured and charged with violating 18 U.S.C. § 922(j), aiding and abetting one another in receiving and concealing firearms that have been transported in interstate commerce, having reasonable cause to believe that the firearms were stolen. The United States amended its indictment to add that the firearms in question were stolen at the time of receipt and concealment and that they had been transported in interstate commerce at some point in time. The United States concedes that the firearms in question were not stolen at the time of their interstate transportation.

Clark and Honaker moved to dismiss the indictments on the basis that the interstate commerce nexus had occurred before the firearms in question were stolen. Following a recommendation by the magistrate judge, the district court granted the motions. The

district court agreed with Clark and Honaker, premising its decision on an interpretation of § 922(j) that would require the interstate commerce transportation to occur after the theft of the firearms. The United States appeals dismissal of the indictment against Honaker.[1]

## II

### A. Standard of Review

■ This Court reviews questions of law de novo. *Whitney v. Brown*, 882 F.2d 1068, 1071 (6th Cir.1989); *Loudermill v. Cleveland Bd. of Educ.*, 844 F.2d 304, 308 (6th Cir.), *cert. denied*, 488 U.S. 946, 109 S.Ct. 377, 102 L.Ed.2d 365 (1988). Although Honaker would have us apply an abuse of discretion standard because such is the standard applied to review a district court's refusal to dismiss an indictment, the true issue here is the interpretation and application of § 922(j). Construction of a statute is a question of law, and thus receives de novo review.

### B. Interpretation of § 922(j)

■ "In determining the meaning of [a] statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990) (citing *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987)). The object and policy of a statute, of course, are reflected in the legislative history of that statute. If, after reference to the language, structure and legislative history of a statute, the intended scope of the statute remains ambiguous, the rule of lenity will apply. *Moskal v. United States*, 498 U.S. 103, 108, 111 S.Ct. 461, 465, 112 L.Ed.2d 449 (1990).

■ In construing § 922(j), it is important to compare its present form with how it previously read. Formerly, § 922(j) stated:

---

1. The United States does not appeal dismissal of the indictment against Clark pursuant to a subsequent plea agreement.

It shall be unlawful for any person to receive, conceal, store, barter, sell, or dispose of any stolen firearm ..., or to pledge or accept as security for a loan any stolen firearm ..., which is moving as, which is part of, or which constitutes interstate or foreign commerce, knowing or having reasonable cause to believe that the firearm ... was stolen.

This language gave rise to two requirements: First, that defendants receive and conceal the firearms while the interstate commerce transportation was ongoing, *United States v. Ruffin*, 490 F.2d 557 (8th Cir.1974), and second, that the firearms be stolen at the time of the interstate shipment. *United States v. West*, 562 F.2d 375 (6th Cir.1977), *cert. denied*, 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515 (1978).

In 1990, however, Congress amended § 922(j) to its current form, which states:

It shall be unlawful for any person to receive, conceal, store, barter, sell, or dispose of any stolen firearm ... which is moving as, which is a part of, which constitutes, or which has been shipped or transported in, interstate or foreign commerce, knowing or having reasonable cause to believe that the firearm ... was stolen.

The parties here dispute whether the statute, as amended, requires that the firearms be stolen at the time of their interstate transportation. Although the language may be somewhat ambiguous, the legislative history makes clear Congress' intent and resolves any perceived ambiguity. *See United States v. R.L.C.*, —— U.S. ——, 112 S.Ct. 1329, 1334, 117 L.Ed.2d 559 (1992).

In its report on proposed changes to § 922, the House of Representatives Committee on the Judiciary explained that the change in § 922(j) would "expand Federal jurisdiction to permit prosecution for transactions involving stolen firearms ... where the firearms have already moved in interstate or foreign commerce." H.R.Rep. No. 681, 101st Cong., 2d Sess., pt. 1 at 106 (1990), U.S.Code Cong. & Admin. News pp. 6472, 6510. Furthermore, in proposing the amendment to § 922(j), the office of the Attorney General indicated that the amendment would "expand federal jurisdiction to permit federal

prosecution for trafficking in firearms which have been stolen ... and which have moved in interstate commerce at any time." Comprehensive Violent Crime Control Act of 1989: Hearing Before the Subcomm. on Crime of the House Comm. on the Judiciary, 101st Cong., 2d Sess. 79–80 (1990) (statement of Edward S.G. Dennis, Assistant Attorney General).

These two statements leave no doubt that Congress intended § 922(j) to apply to firearms that have travelled in interstate commerce, both prior to or after being stolen. As such, we find that the district court incorrectly interpreted § 922(j) and erroneously dismissed the indictment against Honaker.

### III

For the reasons stated above, we **REVERSE** the district court and **REMAND** the case for further proceedings.

RALPH B. GUY, Jr., concurring.

I concur in Judge Hood's opinion and write additionally only to further clarify why I believe this is the correct result. It is axiomatic that the starting point for any attempt at statutory interpretation is the plain language of the statute itself. *See, e.g., United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Title 18 U.S.C. § 922(j) provides in pertinent part:

It shall be unlawful for any person to receive, conceal, store, barter, sell, or dispose of any stolen firearm ... which is moving as, which is a part of, which constitutes, or which has been shipped or transported in, interstate or foreign commerce, knowing or having reasonable cause to believe that the firearm ... was stolen.

It is unclear from this language whether the firearm in question had to have been stolen at the time it moved in interstate commerce in order to make out an offense under the statute. The statute may be construed narrowly, as the district court did, so that the phrase "which has been shipped in interstate commerce" pertains only to *stolen* firearms. Alternatively, it could be read so that the phrase "which has been shipped in interstate commerce" only modifies the word

"firearm," and that "stolen" refers to the status of the firearm at the time of the reception or concealment. Under this latter construction, the government need only prove that the firearm travelled in interstate commerce at some point.

In resolving such ambiguity, recourse to legislative history and other sources revealing the objectives of Congress in enacting § 922(j) is appropriate. *See, e.g., McElroy v. United States,* 455 U.S. 642, 658, 102 S.Ct. 1332, 1341, 71 L.Ed.2d 522 (1982).

Section 922(j) had its origin as part of the Federal Firearms Act, Ch. 850, 52 Stat. 1250 § 2(h) (1938). It originally provided that:

It shall be unlawful for any person to receive, conceal, store, barter, sell or dispose of any firearm or ammunition or to pledge or accept as security for any loan any firearm or ammunition moving or which is part of interstate or foreign commerce, and which while so moving or constituting such part has been stolen, knowing, or having reasonable cause to believe, the same to have been stolen.

Upon the enactment of the Gun Control Act of 1968, Pub.L. 90–618, 92 Stat. 1213, 1221 (1968), the provision was revised to read as follows:

It shall be unlawful for any person to receive, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition, or to pledge or accept as security for a loan any stolen firearm or stolen ammunition, which is moving as, which is part of, or which constitutes interstate or foreign commerce, knowing or having reasonable cause to believe that the firearm or ammunition was stolen.

The statute, as revised, was codified as 18 U.S.C. § 922(j).

Those decisions that construed § 922(j), as it was then written, limited its application to embrace only firearms stolen prior to their movement in interstate commerce and then received or concealed prior to the termination of that movement.

For example, in *United States v. Ruffin,* 490 F.2d 557 (8th Cir.1974), defendants were stopped by police officers in St. Louis, Missouri, for a traffic violation and were found to be in possession of a .45 automatic pistol which had been stolen in Illinois. *Id.* at 558. As a result, defendants were convicted of concealing a stolen pistol in violation of 18 U.S.C. § 922(j). On appeal, the Eighth Circuit reversed, holding that the statutory language as it read then

clearly require[d] a *continuing* relationship with interstate commerce at the time of the alleged concealment. The fundamental issue is whether the government has carried its burden of proof that the gun was still moving or was still part of interstate commerce at the time defendants concealed it. If the gun had come to rest in Missouri, after it was stolen in Illinois ... the interstate character of the transaction would be over, and defendants could not be found guilty of any *federal* crime.

*Id.* at 561 (emphasis in original). *See also United States v. Jones,* 564 F.2d 1315, 1316 (9th Cir.1977) (concluding it is essential that the stolen firearm be in commerce when the offense is committed).

We adopted a position similar to the one taken in *Ruffin* in *United States v. West,* 562 F.2d 375 (6th Cir.1977), *cert. denied,* 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515 (1978). In *West,* the defendant, a United Parcel Service employee in Nashville, Tennessee, stole two pistols from a package of firearms originating in Dalton, Georgia, and on its way to Santa Fe, New Mexico. West subsequently was charged and convicted of violating § 922(j) as it was then written. We reversed, noting that the handguns "were not stolen at the time they crossed state lines into Tennessee." *Id.* at 377.

Thus, prior to 1990, the consensus among the circuits was that, for a conviction under § 922(j): (1) the defendant's receipt or concealment of the stolen firearm must have occurred before the weapon ceased its movement in interstate commerce; and (2) the theft of the firearm must have preceded its travel in interstate commerce.

In 1989, an amendment to § 922(j) was included in the proposed "Comprehensive Violent Crime Control Act," H.R. 2709, 101st

Cong.2d Sess. (1989). The amendment read as follows:

> Section 922(j) of title 18, United States Code, is amended by striking out 'or which constitutes,' and inserting in lieu thereof 'which constitutes, or which had been shipped or transported in,' [interstate or foreign commerce].

H.R. 2709, § 102. Appearing before a subcommittee of the House Judiciary Committee, Assistant Attorney General Edward S.G. Dennis explained that the amendment "would expand federal jurisdiction to permit federal prosecution for trafficking in firearms which have been stolen or have had the serial number removed or altered and which have moved in interstate commerce at any time." *Comprehensive Violent Crime Control Act of 1989: Hearing on H.R. 2709 Before the Subcomm. on Crime of the House Committee on the Judiciary*, 101st Cong.2d Sess. 79–80 (1990).

Although the 1989 Comprehensive Violent Crime Control Act was not passed by Congress, the proposed amendment to § 922(j) was enacted into law as part of Title XXII of the Crime Control Act of 1990, Pub.L. 101–647, 2201, 104 Stat. 4789, 4856 (1990). The amendment resulted in the revision of § 922(j) to its present form. Interestingly, the House Report that accompanied the Crime Control Act of 1990 contained a detailed explication of the Act's firearm provisions, noting that the provisions "were principally drawn from H.R. 2709, the Administration's 'Comprehensive Violent Crime Control Act of 1989,' " and citing Assistant Attorney General Dennis' testimony regarding § 922(j). H.R.Rep. No. 681(I), 101st Cong.2d Sess. (1990), *reprinted in* 1990 U.S.Code Cong. & Admin.News 6472, 6510.

The House Report then explained that "[s]ection 702 amends section 922(j) to expand Federal jurisdiction to permit prosecution for transactions involving stolen firearms and firearms missing serial numbers where the firearms have already moved in interstate or foreign commerce." *Id.*

The district court, after drawing upon largely the same sources, felt that the 1990 amendment to § 922(j) only was intended to overrule the basic holding in *Ruffin*, bringing within the scope of the statute *all* firearms that were stolen at the time they moved through interstate commerce, without regard to the interstate character of the firearms at the time of their receipt and concealment. However, nothing in the legislative history indicates that the sole purpose of the amendment was to address *Ruffin*-like situations. Indeed, just the opposite is true. Assistant Attorney General Dennis' statement plainly suggests the amendment was designed to "expand federal jurisdiction" over the trafficking of stolen firearms "which have moved in interstate commerce *at any time.* " The House Report speaks of *"firearms* [which] have *already moved* in interstate or foreign commerce."

I take such language to mean that Congress sought to deploy the full extent of federal jurisdiction, as emanating from the Commerce Clause, to combat trafficking in stolen weapons. If Congress had intended § 922(j) to be limited in its application only to transactions in firearms that had been stolen prior to their shipment in interstate commerce, I presume it knew how to say so clearly. *See United States v. Yermian*, 468 U.S. 63, 73, 104 S.Ct. 2936, 2942, 82 L.Ed.2d 53 (1984).[1]

---

1. Shortly before amending § 922(j), Congress revised both the Dyer Act, 18 U.S.C. § 2313, and the National Stolen Property Act, 18 U.S.C. § 2315, to contain precisely the jurisdictional limitation the district court found in § 922(j). For example, Congress amended 18 U.S.C. § 2313 to make subject to punishment "[w]hoever receives, possesses, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, which has crossed a State or United States boundary *after being stolen*, knowing the same to have been stolen...." Pub.L. 98–847 § 203, 98 Stat. 2754, 2770 (1984) (emphasis added). Similarly, Congress amended 18 U.S.C. § 2315 to embrace property "which having crossed a State or United States boundary *after being stolen*, unlawfully converted, or taken." Pub.L. 99–646 § 746, 100 Stat. 3592, 3618 (1986) (emphasis added). As the *Ruffin* court held, prior to the 1990 amendment, "[t]he language relating to interstate commerce under § 922(j) [was] virtually identical to the earlier language of ... 18 U.S.C. §§ 2313 and 2315." *Ruffin*, 490 F.2d at 561. If, in amending § 922(j), Congress had desired to maintain such parallel construction, I think it likely that it would have made clear that the statute only applied to firearms which had been

DAVID A. NELSON, Circuit Judge, dissenting.

The 1990 amendment to 18 U.S.C. § 922(j) did not change the statutory language that was at issue in *United States v. West,* 562 F.2d 375 (6th Cir.1977), *cert. denied,* 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515 (1978). Like the district court, I believe that we are still bound by the interpretation given that language in *West.*

The version of the statute in effect when *West* was decided made it a federal crime knowingly to receive a "stolen firearm ... which is moving as ... interstate or foreign commerce...." With the amendment adopted in 1990, it became unlawful knowingly to receive a "stolen firearm ... which is [so] moving ... *or which has been shipped or transported[ ] in interstate or foreign commerce ....*" (Emphasis supplied.)

The amendment added the phrase set out here in italics, but it made no change in the words "stolen firearm." Neither did the amendment make any change in the basic structure of the sentence in which those particular words appeared. "In both the original and amended versions of § 922(j)," as Magistrate Judge Aaron Brown noted in a report and recommendation approved here by the district court, "the phrase 'stolen firearm' precedes and modifies the subsequent interstate commerce language."

As used in both versions of the statute, the words "stolen firearm" are capable of more than one meaning. They could refer to a firearm that had already been stolen by the time it crossed a state line, and they could refer to a firearm stolen either before or after the crossing of a state line. Our decision in *West* teaches that the words have the former meaning; a firearm is not a "stolen firearm," according to *West,* unless it has been stolen by the time the interstate commerce language comes into play.

I do not read the amendment as changing this. What the amendment changed—and all that it was designed to change, as far as the legislative history discloses—was the re-

quirement (noted in *United States v. Ruffin,* 490 F.2d 557 (8th Cir.1974)) that the stolen firearm actually be moving in interstate commerce at the time of its receipt by the defendant. Assistant Attorney General Edward S.G. Dennis described this requirement in the prepared statement he presented on March 6, 1990, to the House Judiciary Committee's Subcommittee on Crime: "Under 18 U.S.C. 922(j) and (k)," Mr. Dennis explained, "it is an offense to traffic in [stolen] firearms *but only if they are actually moving in or a part of interstate commerce at the time of the offense.* " (Emphasis supplied.) [1]

By eliminating the "actually moving" requirement, the proposed legislation described by Mr. Dennis would effect a relatively modest expansion of federal jurisdiction: it would merely "permit federal prosecution for trafficking in firearms which have been stolen or have had the serial number removed or altered and which have moved in interstate commerce at any time." *Id.* at 79–80.

As I read the Dennis statement, it did not say that federal jurisdiction would be expanded to the extent of permitting federal prosecution of anyone stealing any firearm that had ever moved in interstate commerce—as almost every firearm in this country has, at one time or another—whether or not the weapon was a "stolen firearm" at the time it crossed a state line. To make a federal crime out of virtually every theft of a firearm would be to effect a rather dramatic expansion of the jurisdiction of the federal courts—and if that had been the intent of Congress, one supposes that someone in Congress, or someone explaining the legislation pending before Congress, would have mentioned it. No one did.

Section 102 of the crime bill proposed in 1989 by the Bush Administration contained the amendments to 18 U.S.C. §§ 922(j) and 922(k) ultimately adopted in the Crime Control Act of 1990. Captioned **"COMMERCE NEXUS FOR TRAFFICKING IN STOLEN FIREARMS,"** § 102 provided, in subsection (a), that 18 U.S.C. § 922(j) would be amended "by striking out 'or which constitutes' and

transported in interstate commerce "after being stolen."

1. Hearing before the Subcommittee on Crime of the Committee of the Judiciary, 101st Cong., 2d Sess. 80 n. 10 (1990).

inserting in lieu thereof 'which constitutes, or which has been shipped or transported in,'." The accompanying section-by-section analysis explained simply that these amendments "would expand federal jurisdiction, consistent with other firearms provisions, to permit prosecution of transactions in *stolen* firearms . . . in cases in which *the firearms* have previously moved in interstate or foreign commerce. . . ." (Emphasis supplied.)[2] If the words "stolen firearms," as used in this explanation, were intended to mean anything other than what our court had held in *West* that they meant, Congress was remarkably reticent about saying so.

Looking at the language of § 922(j) as amended, at the design of the statute as a whole, and at the object and policy of the amendment as explained by its proponents, I can find no clear indication that Congress meant to change the meaning of "stolen firearms." My colleagues on the panel having taken a different view of the matter, I respectfully dissent.

---

**2.** 135 Cong.Rec. 13,070, 13,078 (1989). The section-by-section analysis of the corresponding section of the Crime Control Act of 1990, similarly, describes the purpose of that section as one of expanding federal jurisdiction "to permit prosecution for transactions involving *stolen* firearms . . . where *the firearms* have already moved in interstate or foreign commerce." H.R.Rep. No. 101–681(I), 101st Cong., 2d Sess. 106 (1990), reprinted in 1990 *U.S.Code Cong. & Admin.News* 6472, 6510 (emphasis supplied).