45 F.3d 428
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Keith Alexander ANDREWS, Defendant-Appellant.
 No. 94-5109.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 31, 1994.
Decided Dec. 29, 1994.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Rockingham. William L. Osteen, Sr., District Judge.
 Fred R. Harwell, Jr., DAVIS & HARWELL, P.A., Winston-Salem, NC, for Appellant.
 Lisa Blue Boggs, Asst. U.S. Atty., Greensboro, NC, for appellee. ON BRIEF: Walter C. Holton, Jr., United States Attorney, Greensboro, NC, for Appellee.
 M.D.N.C.
 AFFIRMED.
 Before RUSSELL and HALL, Circuit Judges, and WILLIAMS, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Defendant Keith Andrews appeals his conviction for receiving stolen firearms under 18 U.S.C. Sec. 922(j) and the district court's determination of the base offense level for his sentence under section 2K2.1 of the Sentencing Guidelines. We affirm.
 
 I.
 
 2
 The parties do not dispute the relevant facts. Defendant Andrews is a produce farmer and trucker in Richmond County, North Carolina. He hunts and collects guns, knives, and NASCAR racing materials.
 
 
 3
 On January 31, 1992, thieves broke into Reggie Wise's house in Anson County, North Carolina, and stole firearms and other items. Shortly thereafter, North Carolina law enforcement officers arrested some suspects, including Jimmy Boyd Wilson, who testified that he had sold Wise's guns, and many other stolen items from various break-ins, to Andrews. On February 3, 1992, state and local officers went to Andrews' farm. He voluntarily spoke with the officers and allowed them to search his house. Officers testified that Andrews admitted buying guns and other property from Wilson that he suspected had been stolen, that he had been tipped off about Wilson's arrest, and that he had instructed an employee to get rid of some of the guns to dodge the police. An officer also testified that Andrews admitted he took the guns because he owed the IRS approximately $22,000, which needed to be paid by January 31, 1992.
 
 
 4
 The police found 109 unloaded guns, including many with personally labeled protective sleeves, displayed in an orderly fashion on the floor in Andrews' den. A number of these guns were Brownings, Remingtons, Parker Brother shotguns, and other shotguns or rifles. The parties stipulated that 49 guns were stolen. The government did not offer any evidence that the guns had travelled in interstate commerce after they had been stolen.
 
 
 5
 On July 26, 1993, Andrews, Wilson, and three others were indicted on three counts of receiving, concealing, and storing stolen firearms under 18 U.S.C. Sec. 922(j). On October 28, 1993, a jury convicted Andrews of one count involving the receipt of guns stolen from Wise's home and acquitted him of the other two counts. Andrews filed a written Motion for Judgment of Acquittal pursuant to Rule 29 of the Federal Rules of Civil Procedure on December 13, 1993, which the district court denied by a Memorandum Order dated January 7, 1994.
 
 
 6
 On January 24, 1994, Andrews filed his objections to the United States Probation Office's presentencing report and the government filed its position on the sentencing factors. On January 27, 1994, the district court sentenced Andrews to 24 months in prison, three years of supervised release, and a $50.00 special assessment. Because Andrews raised close and very important questions, the district court ordered him released pending the outcome of any appeal.
 
 II.
 
 7
 Andrews challenges the district court's construction and interpretation of the interstate nexus requirement of 18 U.S.C. Sec. 922(j). He contends that the government had to prove that the stolen guns he received travelled in interstate commerce after they had been stolen. The district court concluded that the government only had to prove that the guns had travelled interstate before or after they had been stolen.[1] This Court reviews statutory construction issues de novo. United States v. Blackburn, 940 F.2d 107, 109 (4th Cir.1991). "The task of resolving the dispute over the meaning of [a statute] begins where all such inquiries must begin: with the language of the statute itself." United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989), quoted in Farmer v. Employment Security Commission of North Carolina, 4 F.3d 1274, 1279 (4th Cir.1993). Section 922(j), as amended in 1990, provides that:
 
 
 8
 It shall be unlawful for any person to receive, conceal, store, barter, sell, or dispose of any stolen firearm ... which is moving as, which is a part of, which constitutes, or which has been shipped or transported in, interstate or foreign commerce, knowing or having reasonable cause to believe that the firearm ... was stolen.
 
 
 9
 18 U.S.C. Sec. 922(j) (1988 & Supp.1990). We agree with the district court that the language of the statute is ambiguous because it is open to two equally compelling interpretations.[2] See United States v. Honaker, 5 F.3d 160, 162 (6th Cir.1993), cert. denied, 114 S.Ct. 1226 (1994).
 
 
 10
 Andrews argues that the term "stolen firearm" should be treated as a noun phrase. Therefore, the clause "which has been shipped or transported in" refers only to firearms that have already been stolen. In other words, the statute requires proof that a firearm travelled in interstate commerce after it has been stolen. The government provides another plausible reading. The clause "which has been shipped or transported in" could modify only the word "firearm" and "stolen" could refer to the status of the firearm at the time of the alleged receipt or concealment. Under this reading, the government need only prove that the gun travelled in interstate commerce before or after its theft.[3] Because we find the language of the statute ambiguous, we turn to its legislative history for guidance in determining its object and policy. Crandon v. United States, 494 U.S. 152, 158 (1990). We agree with the district court that the legislative history of the 1990 amendment to Sec. 922(j) demonstrates the clear intent of the Congress and the Administration to expand jurisdiction to include interstate travel before or after theft. See Honaker, 5 F.3d at 162.
 
 
 11
 We are persuaded primarily by two items in the statute's legislative history. First, the section-by-section analysis of the Crime Control Act of 1990 reads:
 
 
 12
 Section 702 amends section 922(j) to expand Federal jurisdiction to permit prosecution for transactions involving stolen firearms and firearms missing serial numbers where the firearms have already moved in interstate or foreign commerce.
 
 
 13
 H.R.Rep. No. 681, 101st Cong., 2d Sess., pt. 1 (1990) (emphasis added), reprinted in 1990 U.S.C.C.A.N. 6472, 6510. Although Sec. 922(k),[4] not Sec. 922(j), pertains to firearms missing serial numbers, congressional intent is clear: expand federal jurisdiction by increasing the time frame for proving interstate movement of stolen firearms.[5]
 
 
 14
 The second item of legislative history is the testimony of Assistant Attorney General Edward Dennis in 1989 when the amendments to Secs. 922(j) and 922(k) were first proposed. Dennis discussed both amendments without distinguishing the two:
 
 
 15
 Section 102 which would expand federal jurisdiction to permit federal prosecution for trafficking in firearms which have been stolen or have had the serial number removed or altered and which have moved in interstate commerce at any time.
 
 
 16
 Comprehensive Violent Crime Control Act of 1989: Hearing on H.R. 2709 Before the Subcomm. on Crime of the House Comm. on the Judiciary, 101st Cong., 2d Sess. 79-80 (1990) (emphasis added). Because the legislative history adequately resolves the ambiguity in the language of Sec. 922(j), we affirm Andrews' conviction.[6]
 
 III.
 
 17
 Andrews also challenges the district court's determination of his base offense level under the Sentencing Guidelines. He contends that because he possessed the stolen firearms solely as a lawful collection, he should have received a base level reduction. The district court rejected Andrews' broad definition of "collection" and deemed his guns an unlawful "accumulation" not meriting the reduction. Even if it were a collection, the district court found during the sentencing hearing that "a collection must be lawful in its nature, and [a court] does not look simply to the use, if it involves receipt of stolen property." Joint Appendix at 309 (emphasis added).
 
 
 18
 This Court reviews a district court's primarily legal determinations involving sentencing guideline applications de novo and reviews primarily factual determinations for clear error. United States v. Stoley, 19 F.3d 149, 154 (4th Cir.) (citing United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989)), cert. denied 114 S.Ct. 2754 (1994).
 
 The Sentencing Guidelines provide that:
 
 19
 If the defendant ... possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not ... unlawfully use such firearms or ammunition, decrease the offense level ... to level 6.
 
 
 20
 U.S.S.G. Sec. 2K2.1(b)(2). Application Note 10 of the Guidelines Commentary accompanying section 2K2.1 sets forth the relevant criteria for determining whether a sporting purposes or collection reduction applies:
 
 
 21
 the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of defendant's criminal history (e.g. prior convictions for offenses involving firearms), and the extent to which possession was restricted by local law....
 
 
 22
 Although Andrews possessed a large number of guns that were unloaded and on display in his den, they generally were common shotguns and rifles typically not "collected" in the narrow sense of being "collectors' items." Even if the guns were considered a collection, however, the fact that they were stolen and their possession was restricted by state law[7] disqualifies Andrews from the reduction as a matter of law.
 
 
 23
 The Sentencing Guidelines indicate that all firearms must be possessed for "lawful sporting or collection purposes." U.S.S.G. Sec. 2K2.1(b)(2) (emphasis added). Andrews arguably collected firearms, but his acquisition and possession of stolen firearms clearly was unlawful. Additionally, an officer testified that Andrews admitted preparing the stolen guns for sale to pay his tax debts, suggesting more of an unlawful fencing operation than a lawful collection purpose envisioned by the Sentencing Guidelines. Therefore, we affirm the district court's denial of a base level reduction.
 
 IV.
 
 24
 For the foregoing reasons, we affirm Keith Andrews' conviction and sentence.
 
 AFFIRMED
 
 
 [1]
 The district court followed the reasoning of United States v. Honaker, 5 F.3d 160 (6th Cir.1993), cert. denied, 114 S.Ct. 1226 (1994), in which a divided Sixth Circuit panel held that Sec. 922(j) does not require firearms to be stolen at the time of interstate transportation. In United States v. Brooks, 859 F.Supp. 425, 427 (D. Mont.1994), the United States District Court for the District of Montana also followed the Honaker court's reasoning that the clear legislative history of Sec. 922(j) required such a reading of the statute
 
 
 [2]
 Congress recently amended Sec. 922(j) and removed the ambiguity by adding the words "either before or after it was stolen." Violent Crime Control and Enforcement Act of 1994, Pub.L. No. 103-322, 108 Stat. 1796, 2019 (1994)
 
 
 [3]
 Andrews also offers a structural argument based upon the text of Sec. 922 as a whole. Because only Sec. 922(i) (prohibiting shipment of stolen firearms) and Sec. 922(j) (prohibiting receipt of stolen firearms) deal with stolen firearms, and Sec. 922(i) clearly requires firearms to be stolen prior to interstate shipment, it follows that Sec. 922(j) has the same requirement
 This argument has the appeal of symmetry, but the shipping of stolen firearms requires that they be stolen first before travelling interstate. For receiving, however, there is a gap between theft and receipt, which makes it less obvious when theft must occur in relation to interstate commerce.
 
 
 [4]
 Section 922(k) prohibits altering the serial numbers of firearms and was amended in 1990 to include language allowing proof of interstate commerce "at any time" for federal jurisdiction purposes. 28 U.S.C. Sec. 922(k) (1988 & Supp.1990). Andrews argues that because Congress declined to amend Sec. 922(j) at the same time with similar words, it did not intend to expand jurisdiction as far for crimes involving the receipt of stolen firearms. The Honaker court conveniently excised "firearms missing serial numbers" from its quotation of H.R.Rep. No. 681. See Honaker, 5 F.3d at 162. From the items of legislative history discussed above, however, it is evident that Congress intended to expand the jurisdiction of both statutes
 
 
 [5]
 Andrews argues that the amendment only expands jurisdiction for cases where a stolen gun has travelled in interstate commerce after its theft, but before its receipt, and not simply before its theft. Assistant Attorney General Dennis' statement, infra, which uses the language "at any time," suggests a broader expansion of jurisdiction
 
 
 [6]
 Andrews also claims that because the language, structure, and legislative history of the statute are ambiguous, the rule of lenity should apply. See Moskal v. United States, 498 U.S. 103, 108 (1990). Because we find the legislative history sufficiently clear to disclose the intent of the drafters, we cannot apply the rule of lenity in this case. United States v. Jones, 993 F.2d 1131, 1136 (4th Cir.1993) ("The rule of lenity applies only where the ambiguity remains after resort to the legislative history fails to disclose the intent of the drafters."), aff'd sub nom. Beecham v. United States, 114 S.Ct. 1669 (1994)
 
 
 [7]
 North Carolina General Statute Sec. 14-71-1 prohibits the possession of stolen property