

Opinions of the United
States Court of Appeals
for the Third Circuit

1-21-1999

# USA v. Sanders

Precedential or Non-Precedential:

Docket 98-7273

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"USA v. Sanders" (1999). *1999 Decisions.* Paper 16.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/16

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 21, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-7273

UNITED STATES OF AMERICA

v.

CYRUS R. SANDERS
       Appellant

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Cr. No. 4: CR-96-0023/01)
District Judge: Honorable James F. McClure, Jr.

Argued November 17, 1998

Before: BECKER, Chief Judge, GREENBERG,
Circuit Judge, and McLAUGHLIN, District Judge*

(Filed January 21, 1999)

        KYLE W. RUDE, ESQUIRE
         (ARGUED)
        330 Pine Street
        P.O. Box 3033
        Williamsport, PA 17701

Counsel for Appellant

_____

* Honorable Sean J. McLaughlin, United States District Judge for the
Western District of Pennsylvania, sitting by designation.

DAVID M. BARASCH, ESQUIRE
United States Attorney
THEODORE B. SMITH, III, ESQUIRE
  (ARGUED)
Assistant United States Attorney
DENNIS C. PFANNENSCHMIDT,
  ESQUIRE
Assistant United States Attorney
228 Walnut Street
P.O. Box 11754
Harrisburg, PA 17108

Counsel for Appellee

OPINION OF THE COURT

McLAUGHLIN, District Judge.

Prior to its amendment effective September 13, 1994, 18 U.S.C. S922(j) made it unlawful "for any person to ... sell[ ] or dispose of any stolen firearm ... which has been shipped or transported in [interstate commerce], knowing or having reasonable cause to believe that the firearm ... was stolen." 18 U.S.C.A. S922(j) (West 1976) and Historical and Statutory Notes to 1990 Amendment (West Supp. 1998). Appellant Cyrus Sanders, Jr. was convicted in the United States District Court for the Middle District of Pennsylvania for violations of this provision upon entering a plea of guilty to charges of trafficking and conspiring to traffic in stolen firearms. It is undisputed that the transactions for which Sanders was convicted involved the sale and disposal of firearms that had entered the stream of interstate commerce prior to their theft, but not thereafter.

Sanders now appeals the District Court's denial of his motion to set aside, correct, or vacate his sentence under 28 U.S.C. S2255. Appellant claims that his counsel was ineffective in advising him to plead guilty to the trafficking charges inasmuch as the applicable version of S922(j) did not prohibit his particular conduct. We are thus called upon to determine whether S922(j), prior to its amendment in 1994, was intended to apply to transactions in stolen

2

firearms where the weapons moved in interstate commerce only prior to being stolen. We conclude that it was. Accordingly, we affirm the District Court's order.

I. BACKGROUND

On January 24, 1996, a federal grand jury in Pennsylvania returned a four-count indictment against Sanders charging him with conspiracy to possess a firearm as a convicted felon and to traffic in stolen firearms [Count I], possession of a firearm by a convicted felon [Count II], trafficking in stolen firearms in violation of 18 U.S.C. S922(j) [Count III], and retaliating against a witness [Count IV]. The government alleged that, between September 1990 and April 1994, Sanders conspired with two other individuals to burglarize several residences in remote locations. Once inside the residences, Sanders and his cohorts would steal items with potential resale value, including firearms. Other firearms were obtained by providing false information to legitimate gun dealers. In all, a total of forty-four guns ultimately were attributed to Sanders. These firearms were sold to private individuals and legitimate dealers, often at gun shows. All of the firearms at issue were disposed of in Pennsylvania and never entered interstate commerce after Sanders came into possession of them.

The scheme finally ended after one of Sanders's fellow conspirators was arrested and began cooperating with law enforcement officials. Following his own indictment, Sanders agreed to plead guilty to the charges of trafficking and conspiring to traffic in stolen firearms on the advice of his attorney. In exchange for his plea, the remaining charges against him were dismissed. The District Court subsequently sentenced Sanders to a seventy-month term of incarceration.

On January 14, 1998 Sanders filed a motion to set aside, correct, or vacate his sentence pursuant to 28 U.S.C. S2255. Sanders claims that he committed no violation of the law with respect to the trafficking charges set forth in Counts I and III and, therefore, his attorney was ineffective in advising him to plead guilty to those charges. More

3

specifically, Sanders contends that the version of 18 U.S.C.
S922(j) in effect at the time of his conduct required that the
firearms which are the subject of the trafficking offense
enter interstate commerce as stolen firearms, i.e., after
being stolen. Sanders further claims that he was prejudiced
by his counsel's ineffectiveness. He theorizes that, if he had
been able to successfully challenge the trafficking charges
under Counts I and III, he might have had an additional
"bargaining chip" with which to negotiate a better plea offer.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over the instant appeal pursuant to
28 U.S.C. S2255 and S1291. United States v. Cleary, 46
F.3d 307, 309 (3d Cir. 1995). Because our disposition of
this appeal ultimately turns on an interpretation of
statutory law, we apply a plenary standard of review. See
Parrish v. Fulcomer, 150 F.3d 326, 328 (3d Cir. 1998) (legal
component of an ineffective assistance of counsel claim in
the habeas context is subject to plenary review) (addressing
claim under 28 U.S.C. S2254).

## III. DISCUSSION

A.

Initially, we must address the government's argument
that Sanders has procedurally defaulted his present claim
by failing to raise it either in the District Court or on direct
appeal. "Where a defendant has procedurally defaulted a
claim by failing to raise it on direct review, the claim may
be raised in habeas only if the defendant can first
demonstrate either `cause' and `actual prejudice,' ... or that
he is `actually innocent.' " Bousely v. United States, ___ U.S.
___, ___, 118 S. Ct. 1604, 1611 (1998) (internal citations
omitted). We will limit our inquiry, as the parties have, to
the issue of whether Sanders has shown "cause" and
"actual prejudice" for his procedural default.1

_____

1. In light of our disposition of this appeal, Sanders would be unable in
any event to establish his "actual innocence" with respect to the S922(j)
charges.

4

Sanders contends that he can establish "cause" by virtue of his counsel's ineffectiveness in advising him to plead guilty to the trafficking and conspiracy charges under Counts I and III of the indictment. A showing of ineffectiveness of counsel which rises to the level of a constitutional deprivation can indeed constitute the type of prejudice that will excuse procedural default. See Murray v. Carrier, 477 U.S. 478, 488 (1986); Sistrunk v. Vaughn, 96 F.3d 666, 675 (3d Cir. 1996) (state prisoner habeas claim); United States v. Essig, 10 F.3d 968, 979 (3d Cir. 1993) (recognizing principle but declining to consider it on appeal). Accord United States v. Guerra, 94 F.3d 989, 993–94 (5th Cir. 1996); United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995). To prevail on such a claim, however, a defendant must show both that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that counsel's deficiencies prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Sistrunk, 96 F.3d at 670.

The district judge rejected Sanders's ineffective assistance of counsel claim based on a two-part analysis. First, the judge observed that the government had acquired overwhelming evidence of Sanders's guilt. He therefore considered it reasonable for defense counsel to presume that Sanders would ultimately be convicted by a jury. The district judge then engaged in a lengthy and detailed analysis of the potential ramifications of Sanders's plea agreement for purposes of sentencing. He essentially predicted that Sanders benefitted from his plea agreement because he faced less potential jail time than he might otherwise have faced if convicted on the felon-in-possession charge under Count II of the Indictment. In light of these circumstances, the judge found that defense counsel acted reasonably in not moving to dismiss the trafficking charge and instead advising Sanders to plead guilty to that charge and the related conspiracy charge.

On appeal, Sanders argues that, regardless of the District Court's ex post calculation of his supposed sentence on Counts I, II, and IV, he would have been in a better plea bargaining position to receive a shorter sentence if Count III and part of Count I had been dismissed. However, we need

5

not reach this issue. Because we conclude that Sanders did in fact engage in prohibited conduct under Counts I and III of the indictment, it necessarily follows that Sanders's counsel was not ineffective in advising him to plead guilty to those charges rather than attempting to have them dismissed. It further follows that Sanders's S2255 claim would inevitably fail on the merits, as he can demonstrate no legitimate basis for withdrawal of his guilty plea or for vacating his sentence. We turn, then, to our examination of the operative statutory provision.

B.

It is undisputed that the conduct for which Sanders was charged occurred between September 1990 and April 1994. The parties therefore agree that, for purposes of this case, we must apply 18 U.S.C. S922(j) as it existed following its amendment in 1990 and prior to its amendment effective September 13, 1994. See 18 U.S.C.A. S922(j) (West 1976) and Historical and Statutory Notes to S922, 1990 Amendment (West Supp. 1998). This version of S922(j) reads as follows:

> It shall be unlawful for any person to receive, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition, or pledge or accept as security for a loan any stolen firearm or stolen ammunition, which is moving as, which is a part of, which constitutes, or which has been shipped or transported in, interstate or foreign commerce, knowing or having reasonable cause to believe that the firearm or ammunition was stolen.

Id.

Sanders interprets the foregoing language to mean that the subject firearm must have traveled in interstate commerce as a stolen firearm -- i.e., the theft must have occurred prior to the stolen firearm's movement in interstate commerce. The government interprets this same language to mean only that the firearm which is the subject of the trafficking offense must have passed in interstate commerce at some time, whether before or after it was stolen. The significance of these differing interpretations is clear. Under the first interpretation, Sanders did not

6

commit a violation of S922(j) because the firearms of which he disposed never passed through interstate commerce after he stole them. Under the government's interpretation, Sanders did in fact commit a violation of S922(j) and, therefore, his counsel could not have been ineffective in failing to have those charges dismissed.

In ascertaining the meaning of a statutory provision, we are instructed to "look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." Crandon v. United States, 494 U.S. 152, 158 (1990) (citations omitted). See also McElroy v. United States, 455 U.S. 642, 658 (1982) (Court looks to statutory language and legislative history in determining Congress's intent). If a "reasonable doubt persists about a statute's intended scope even after resort to `the language and structure, legislative history, and motivating policies' of the statute," Moskal v. United States, 498 U.S. 103, 108 (1990) (emphasis in original), then the rule of lenity applies and the statute is to be narrowly construed. Id. (citations omitted); Crandon, 494 U.S. at 158.

On its face, S922(j) appears to be susceptible to two alternative interpretations. On the one hand, it can be argued that the phrase "which has been shipped or transported in [interstate commerce]" modifies only the word "firearm" and that the term "stolen firearm" merely indicates the status of the firearm at the time of the proscribed transaction. This is the view adopted by the government. The result of this interpretation is that an offense is committed when a stolen firearm is sold, disposed of, etc. by one having reason to know that it was stolen, as long as the firearm passed through interstate commerce at some time, whether before or after its theft. On the other hand, Sanders urges that the phrase "which has been shipped or transported in [interstate commerce]" modifies the phrase "stolen firearm," such that thefirearm must have moved through interstate commerce as a stolen firearm. We view each of these proposed interpretations as facially plausible.

If there is any ambiguity in the language of S922(j), however, we think it is resolved by reference to the

7

legislative history. It is instructive to note the prior version of S922(j) which, until its amendment in 1990, stated:

> It shall be unlawful for any person to receive, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition, or pledge or accept as security for a loan any stolen firearm or stolen ammunition, which is moving as, which is a part of, or which constitutes, interstate or foreign commerce, knowing or having reasonable cause to believe that the firearm or ammunition was stolen.

Federal courts applying this provision had interpreted it as requiring two elements: first, the firearm's movement through interstate commerce had to be on-going at the time of the underlying trafficking offense, see United States v. Jones, 564 F.2d 1315, 1316 (9th Cir. 1977), United States v. Ruffin, 490 F.2d 557, 560-61 (8th Cir. 1974); and second, the firearm had to be stolen at the time of its movement through interstate commerce. See United States v. West, 562 F.2d 375, 377-78 (6th Cir. 1977), cert. denied, 435 U.S. 922 (1978).

In 1990 Congress amended S922(j) so as to include within its scope firearms "which ha[ve] been shipped or transported in [interstate commerce]." Pub.L. 101-647 S2202(a). It is clear from the legislative history that this amendment was intended to expand the jurisdiction of federal courts by broadening the scope of the interstate commerce nexus. In addressing the amendment before the House Judiciary Subcommittee on Crime, Assistant Attorney General Edward S. G. Dennis observed that the change in 922(j) "would expand federal jurisdiction to permit federal prosecution for trafficking infirearms which have been stolen or have had the serial number removed or altered and which have moved in interstate commerce at any time." Comprehensive Violent Crime Control Act of 1989: Hearing on H.R. 2709 Before the Subcommittee on Crime of the House Committee on the Judiciary, 101st Cong.2d Sess. 79-80 (1990) (emphasis added). The report of the House Judiciary Committee similarly notes that the amendment to S922(j) "expand[s] Federal jurisdiction to permit prosecution for transactions involving stolen firearms ... where the firearms have already moved in interstate or foreign

8

commerce." H.R. Rep. No. 681, 101st Cong., 2d Sess., pt. 1 at 106 (1990), reprinted in 1990 U.S. Code Cong. & Admin. News 6472, 6510 (emphasis added).

Sanders opines that, in enacting the 1990 amendment so as to expand federal jurisdiction under S922(j), Congress intended to do no more than eliminate the former requirement of contemporaneous interstate commerce travel at the time of the proscribed firearm trafficking offense. In other words, according to Sanders, the provision covers firearms that have come to rest after completing their interstate commerce journey, provided that the firearms were stolen at the time they moved in interstate commerce. As support for this position, Sanders refers us to United States v. Cruz, 50 F.3d 714 (9th Cir. 1995), cert. denied, ___ U.S. ___, 118 S. Ct. 611 (1997). In Cruz, the Ninth Circuit Court of Appeals specifically considered whether S922(j), as amended in 1990, applied to the receipt of a stolen firearm which had not traveled in interstate commerce after its theft. The court examined both the language of S922(j) and its legislative history and concluded that Congress's intent as to the specific scope of the statute remained unclear. It noted, for example, that,

> [w]hile the text of [Assistant Attorney General] Dennis's statement tends to support an expansive interpretation, a footnote remarks that under S922(j) and (k) (prior to amendment), it was an offense to traffic in such firearms only `if they are actually moving in or a part of interstate commerce at the time of the offense,' id. at 80 n. 10, which tends to support the less expansive interpretation that the legislation was aimed at removing the contemporaneousness requirement rather than the requirement of travel in interstate commerce as a stolen weapon.

50 F.3d at 718. With respect to the report of the House Judiciary Committee, the Ninth Circuit found the committee's reference to firearms that "have already moved in interstate ... commerce" to be ambiguous since "it could refer either to movement before or after the theft, or only to movement after the theft but before receipt." Id. Consequently, the court applied the rule of lenity and held that the statute only applies to trafficking offenses where

the subject firearm traveled in interstate commerce as a stolen firearm. 50 F.3d at 719.

The government, by contrast, urges us to accept the view of the Sixth Circuit Court of Appeals as set forth in United States v. Honaker, 5 F.3d 160 (6th Cir. 1993), cert. denied, 510 U.S. 1180 (1994). In that case, a majority of the circuit panel held that S922(j), as amended in 1990, encompasses cases where the stolen firearm moved in interstate commerce only prior to its theft. Id. at 162. The majority acknowledged that the language of the statute was somewhat ambiguous but determined that any ambiguity was clarified by resort to the comments of the House Judiciary Committee and the remarks of Assistant Attorney General Dennis. Id. The court found that "[t]hese two statements leave no doubt that Congress intended S922 (j) to apply to firearms that have traveled in interstate commerce, both prior to or after being stolen." Id. See also United States v. Staula, 80 F.3d 596, 605 (1st Cir. 1996) (holding that, under S922(j), it is sufficient if weapon floats in the stream of interstate commerce at some point prior to the commission of the offense of conviction), cert. denied, ___ U.S. ___, 117 S. Ct. 156 (1996).

We find this latter view to be more compelling than that taken by the Ninth Circuit in Cruz. As Judge Guy noted in his concurring opinion in Honaker, there is nothing in the legislative history of S922(j) to suggest that the sole purpose of the 1990 amendment was to end the statute's requirement of contemporaneous interstate movement. See 5 F.3d at 164 (Guy, J., concurring). On the contrary, the comments of both the House Judiciary Committee and Assistant Attorney General Dennis regarding Congress's intent to expand federal jurisdiction suggest that"Congress sought to deploy the full extent of federal jurisdiction, as emanating from the Commerce Clause, to combat trafficking in stolen weapons." Id. Furthermore, we, like Judge Guy, presume that, if Congress had intended a more narrow purpose, it knew how to say so clearly. Cf. 18 U.S.C.A. S2313(a) (West Supp. 1998) (proscribing transactions in "any motor vehicle or aircraft, which has crossed a State or United States boundary after being stolen, [by persons] knowing the same to have been stolen")

10

(emphasis added); 18 U.S.C.A. S2315 (West Supp. 1998) (proscribing, inter alia, transactions in certain goods, moneys and securities "which have crossed a State or United States boundary after being stolen ... [by persons] knowing the same to have been stolen...") (emphasis added).

In sum, then, we conclude that S922(j), as amended in 1990, was intended by Congress to apply to cases like this one where the stolen firearms traveled in interstate commerce only prior to their theft.2 In light of this conclusion, Appellant's claim of ineffective assistance of counsel fails. There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument. See Newsted v. Gibson, 158 F.3d 1085, 1090 (10th Cir. 1998) (S2254 claim); Rodriguez v. United States, 17 F.3d 225, 226 (8th Cir. 1994); Shah v. United States, 878 F.2d 1156, 1162 (9th Cir. 1989) (citation omitted). Accordingly, the order of the District Court will be affirmed.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit

_____

2. Two other circuits have rendered unpublished decisions arriving at the same conclusion. See United States v. Alford, 60 F.3d 830 (Table Disposition No. 95-1627), 1995 WL 410983 (8th Cir. July 13, 1995); United States v. Andrews, 45 F.3d 428 (Table Disposition No. 94-5109), 1994 WL 717589 (4th Cir. Dec. 29, 1994).

11